**PROVIDENT LIFE & ACCIDENT INSURANCE COMPANY,**
Plaintiff–Appellant,

v.

**Mary J. WALLER, Defendant–Appellee.**

**PROVIDENT LIFE & ACCIDENT INSURANCE COMPANY,**
Plaintiff–Appellee,

v.

**Mary J. WALLER,**
Defendant–Appellant.

Nos. 89–2123, 89–2124.

United States Court of Appeals,
Fourth Circuit.

Argued March 6, 1990.

Decided June 27, 1990.

As Amended July 10, 1990.

William Hitchcock Lindsey, Bounds & Dorsey, P.C., Roanoke, Va., for plaintiff-appellant.

W. Carrington Thompson, Chatham, Va. (Thomas L. Phillips, Phillips, Phillips & Phillips, Rustburg, Va., on brief), for defendant-appellee.

Before MURNAGHAN, Circuit Judge, BUTZNER, Senior Circuit Judge, and KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.

MURNAGHAN, Circuit Judge:

We are presented with several difficult questions regarding the scope of the Employee Retirement Income Security Act of 1974 ("ERISA") and the power of the federal courts to fill in the interstices of this comprehensive and labyrinthine statute.

Specifically, we address whether the Provident Life & Accident Insurance Co. ("Provident") may recover monies advanced to one of its plan participants, Mary J. Waller, after she was injured in an auto accident. In response to Provident's action under ERISA for recovery of the advanced benefits, the district court concluded that Provident was not entitled to reimbursement because it did not comply with one of the provisions of the ERISA-governed plan. On Provident's appeal, we conclude that a failure to repay this advance would unjustly enrich Waller and contradict the intent of both ERISA and the plan. Accordingly, we reverse the order of the district court and enter judgment for Provident.

I.

Waller was employed by Burlington Industries and a participant in its qualified self-funded employee benefit plan, which is administered by Provident. The plan pays life, medical and disability benefits to or on behalf of its participants, such as Waller. However, the plan specifically provides in an "Acts of Third Parties" provision that

Medical and disability benefits are not payable to or for a person covered under the Group Plan when the injury or illness to the covered person occurs through the act or omission of another person. However, payment for medical care expenses ... for an injury or illness in which a third party is liable *may be advanced by Provident.* For this to happen, the *covered person must sign an agreement to repay the Group Plan in full any payments advanced* ... from the judgment or settlement he or she receives....

(Emphasis added.)

On February 21, 1986, Waller was injured in a car accident in which she was not at fault. On Waller's written request, Provident advanced her $5,922.53 in medical expenses despite never obtaining a signed repayment agreement.[1] Waller later recovered damages from the third party in excess of what the plan paid out to her. After Waller refused to reimburse the

---

1. The record is silent on why the agreement was never signed by Waller. Provident states only that the benefits were advanced "at [Waller's] request." Appellant's Br. at 3.

plan, Provident brought an action under ERISA, 29 U.S.C. § 1132(a)(1)(B), (e)(2) (1982), for recovery of the advanced monies plus costs and attorney's fees. Although admitting to receiving the money from a third party,[2] Waller filed an answer questioning the district court's jurisdiction under § 1132(a)(1)(B). She also filed a counterclaim under § 1132(a)(1)(B) requesting a declaratory judgment that the Virginia anti-subrogation statute, Va.Code Ann. § 38.2–3405, precluded reimbursement and was not preempted by ERISA. Finally, Waller requested class certification on behalf of all plan beneficiaries who had repaid money advanced by Provident.

The district court denied Waller's motion to certify the class but denied Provident's motion for summary judgment and entered judgment in favor of Waller. The district court found that although ERISA preempted the Virginia anti-subrogation provision, Provident's failure to require Waller to sign the repayment provision constituted noncompliance with the terms of the plan and therefore barred its recovery of advanced expenses. Provident appeals that conclusion and Waller appeals the district court's denial of class certification.

## II.

In its complaint, Provident alleged federal jurisdiction under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) (West 1985). Waller maintains that § 1132(a)(1)(B) does not provide a federal cause of action for plan administrators. We agree, but nonetheless conclude that the district court had jurisdiction under the federal question provision.

### A.

Section 1132(a)(1)(B) provides, in relevant part, that "[a] civil action may be brought ... by a *participant* or *beneficiary* ... to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan" (emphasis added). Here, Provident was neither a participant nor beneficiary but rather the administrator of Burlington's self-funded plan.[3] Although we have not yet addressed the scope of § 1132(a), most of our sister circuits have limited federal jurisdiction to the suits by the entities specified in the statute. *See, e.g., Hermann Hosp. v. MEBA Medical & Benefits Plan*, 845 F.2d 1286, 1288–89 (5th Cir.1988) ("Where Congress has defined the parties who may bring a civil action founded on ERISA, we are loathe to ignore the legislature's specificity."); *Pressroom Unions–Printers League Income Security Fund v. Continental Assurance Co.*, 700 F.2d 889, 892 (2d Cir.) ("legislature [did not] intend[ ] to grant subject matter jurisdiction over suits by employers, funds, or other parties not listed in § 1132[a]...."), *cert. denied*, 464 U.S. 845, 104 S.Ct. 148, 78 L.Ed.2d 138 (1983).[4] Such a conclusion is amply supported by the Supreme Court's decision in *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 21, 103 S.Ct. 2841, 2852, 77 L.Ed.2d 420 (1983), which noted that "[t]he express grant of

---

**2.** An affidavit submitted by Burlington's group benefits manager demonstrated that Waller also knew of the "Acts of Third Parties" provision.

**3.** In the "definitions" section of ERISA, the term "participant" is described as "any employee ... who is or may become eligible to receive a benefit of any type from an employee benefit plan...." 29 U.S.C.A. § 1002(7) (West Supp. 1990). A beneficiary is described as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C.A. § 1002(8) (West Supp.1990). The term "administrator" means "the person specifically designated by the terms of the instrument under which the plan is operated; [or] ... the plan

sponsor...." 29 U.S.C.A. § 1002(16)(A) (West Supp.1990).

**4.** The only circuit holding a contrary view is the Ninth, which held in *Fentron Indus. v. National Shopmen Pension Fund*, 674 F.2d 1300, 1304 (9th Cir.1982), that certain "non-enumerated" parties have standing to sue under § 1132(a)(1)(B). However, *Fentron* has been widely criticized and narrowed within its own circuit. *See Associated Builders & Contractors v. Carpenters Vacation & Holiday Trust Fund*, 700 F.2d 1269, 1278 (9th Cir.) (limiting *Fentron* to confer standing only where "specific and personal" injuries alleged), *cert. denied*, 464 U.S. 825, 104 S.Ct. 94, 78 L.Ed.2d 101 (1983).

federal.jurisdiction in ERISA is limited to suits brought by certain parties ... as to whom Congress presumably determined that a right to enter federal court was necessary to further the statute's purposes." Finally, at least two courts specifically have concluded that plan administrators may not bring suit under § 1132(a)(1)(B) of ERISA. *See Great Lakes Steel v. Deggendorf,* 716 F.2d 1101, 1104 (6th Cir.1983); *In Re Sheppard,* 658 F.Supp. 729, 734 (C.D.Ill.1987). We find ourselves in agreement with this view, and so conclude that Provident cannot bring suit under § 1132(a)(1)(B).[5]

### B.

■ Ordinarily, the failure to state the federal statutory or constitutional provision under which a claim arises warrants dismissal for lack of subject matter jurisdiction. However, it is well settled that courts may excuse pleading defects if the facts alleged in the complaint and the relief requested demonstrate the existence of a substantial federal question. *See Schlesinger v. Councilman,* 420 U.S. 738, 744 n. 9, 95 S.Ct. 1300, 1306 n. 9, 43 L.Ed.2d 591 (1975) (§ 1331 "nowhere mentioned" in complaint but facts "demonstrate the existence of a federal question"); *Blue v. Craig,* 505 F.2d 830, 844 (4th Cir.1974) ("[I]f facts giving the court jurisdiction are set forth in the complaint, the provision conferring jurisdiction need not be specifically pleaded.") (quoting *Williams v. United States,* 405 F.2d 951, 954 (9th Cir.1969)); 5 C. Wright & A. Miller, *Federal Practice & Procedure: Civil* § 1209, at 92 (1969 & Supp.1989) ("failure to name the particular

statute ... under which the action arises is not fatal if the remainder of the complaint shows that a *federal question actually is* involved or relied upon by the pleader"). We believe that the balance of Provident's complaint demonstrates that a federal question is involved, *see* 28 U.S.C. § 1331(a) (1982).[6]

■ Section 1331(a) provides that district courts "shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States." A suit "arises under" federal law if federal law creates the cause of action. *American Well Works Co. v. Layne & Bowler Co.,* 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916); *Cook v. Georgetown Steel Corp.,* 770 F.2d 1272, 1274 n. 2 (4th Cir.1985). Although the issue was at one point in doubt, *see T.B. Harms Co. v. Eliscu,* 339 F.2d 823, 827–28 (2d Cir.1964) (Friendly, J.), *cert. denied,* 381 U.S. 915, 85 S.Ct. 1534, 14 L.Ed.2d 435 (1965), there is no longer any question that the word "laws" in § 1331(a) embraces claims founded upon federal common law. In *Illinois v. City of Milwaukee,* 406 U.S. 91, 100, 92 S.Ct. 1385, 1391, 31 L.Ed.2d 712 (1972), the Supreme Court concluded that "§ 1331 jurisdiction will support claims founded upon federal common law as well as those of a statutory origin." *City of Milwaukee* involved a public nuisance suit brought by the State of Illinois against four Wisconsin cities and a city sewage commission for dumping raw sewage into Lake Michigan. The Court, asked to exercise its original jurisdiction because a state was a party, declined but instead found federal question

---

**5.** It is probable, however, that Provident could have sued *under* § 1132(a)(3), *which provides that*

"[a] civil action may be brought ... by a participant, beneficiary, or *fiduciary* (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain *other appropriate equitable relief* (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C.A. § 1132(a)(3) (West 1985) (emphasis added). Recently, we concluded in an analogous ERISA situation that a plan administrator "is clearly a fiduciary." *U.S. Steel Mining Co. v.*

*District 17, United Mine Workers of America,* 897 F.2d 149, 152 (4th Cir.1990). That conclusion is bolstered by a recent Department of Labor regulation, which states that "a plan administrator ... must, by the very nature of his position, have 'discretionary authority [and fiduciary status].'" 29 C.F.R. § 2509.75–8 (1989).

**6.** Although the ERISA provision not referred to in Provident's complaint, 29 U.S.C. § 1132(a)(3), may also provide a route to federal jurisdiction, there is seemingly little or no authority with regard to that question. Accordingly, in this case, we prefer to ground federal jurisdiction under the federal question provision.

jurisdiction. The Court held that because Congress had federalized the area of water pollution with the Water Pollution Control Act of 1972, federal courts could impose remedies that fell within the interstices of this act using a federal common law of nuisance. The Court concluded that such a suit arose under the "laws" of the United States. 406 U.S. at 100–04, 92 S.Ct. at 1391–93.

Citing *City of Milwaukee*, several courts have held that ERISA actions governed by federal common law "arise under" federal law for purposes of § 1331. *See Airco Industrial Gases v. Teamsters Health & Welfare Pension Fund*, 850 F.2d 1028, 1033 (3d Cir.1988); *Whitworth Bros. Storage Co. v. Central States Pension Fund*, 794 F.2d 221, 236 (6th Cir.), *cert. denied*, 479 U.S. 1007, 107 S.Ct. 645, 93 L.Ed.2d 701 (1986); *Northeast Dep't ILGWU v. Teamsters Local Union No. 229*, 764 F.2d 147, 154–59 (3d Cir.1985) (opinion of Becker, J.). *Cf. Award Service, Inc. v. Northern Calif. Retail Clerks Unions*, 763 F.2d 1066, 1068 (9th Cir.1985) (district court had § 1331 jurisdiction for purposes of determining whether employer had implied cause of action under ERISA), *cert. denied*, 474 U.S. 1081, 106 S.Ct. 850, 88 L.Ed.2d 890 (1986). One commentator has cited *City of Milwaukee* for the proposition that "federal common law supports federal question jurisdiction in the district courts in exactly the same way as other federal law does." Field, *Sources of Law: The Scope of Federal Common Law*, 99 Harv.L.Rev. 881, 897 (1986); *see also* Merrill, *The Common Law Powers of Federal Courts*, 52 U.Chi. L.Rev. 1, 40–46 (1985).

As to the situation presented *sub judice*, both *Airco Industrial Gases* and *Whit-*

*worth* are particularly instructive. In *Airco*, an employer sued an employee benefit plan seeking to recover, under the equitable doctrine of unjust enrichment, overpayments made by mistake. After the district court found federal question jurisdiction and granted relief for the plaintiff, the Third Circuit affirmed on the jurisdictional point. Writing for a unanimous panel, Judge Higginbotham stated that ERISA's broad preemption provision, 29 U.S.C. § 1144(a), "require[s] the application of federal legal principles for its disposition in this case, that is, federal common law principles." 850 F.2d at 1033. Thus, the court concluded that "we agree with [the district court's] conclusion that section 1331 conferred upon it subject matter jurisdiction *to determine the existence of a federal common law cause of action based on unjust enrichment.*" *Id.* at 1034 (emphasis added).

Similarly, in *Whitworth*, an employer sued under the contract doctrine of restitution to recover payments mistakenly made to a retirement plan. Because the employer was neither a plan participant, beneficiary, or fiduciary, the Sixth Circuit concluded that the plaintiff could not premise jurisdiction on the face of the ERISA statute. 794 F.2d at 227. However, because the restitution claim could only be decided under federal common law given ERISA's preemption clause, the court held that plaintiff's claims "arise under federal law pursuant to 28 U.S.C. § 1331." *Id.* at 233.

As in *Airco* and *Whitworth*, this appeal presents an application of federal common law. There is little question that Provident's claim of unjust enrichment may not be predicated on state law given ERISA's broad preemption provision.[7] *See* 29 U.S.

---

**7.** A question does exist, however, as to whether ERISA preempts the Virginia anti-subrogation provision, Va.Code Ann. § 38.2–3405 (Michie 1986 Repl.). Provident argues, and the district court agreed, that preemption is appropriate; conversely, Waller contends that the Virginia provision is controlling and requires a judgment in her favor. Despite the district court's finding that the anti-subrogation statute "without reservation" meets the test for preemption outlined in *Shaw v. Delta Air Lines*, 463 U.S. 85, 97–99, 103 S.Ct. 2890, 2900–01, 77 L.Ed.2d 490 (1983), we note that the issue of whether state anti-sub-

rogation provisions are preempted by ERISA has divided the courts. *Compare FMC Corp. v. Holliday*, 885 F.2d 79, 89–90 (3d Cir.1989) (ERISA did not preempt Pennsylvania anti-subrogation provision because law did not address a "core type of ERISA matter"), *cert. granted*, — U.S. ——, 110 S.Ct. 1109, 107 L.Ed.2d 1017 (1990), *with United Food & Commercial Workers & Employers Arizona Health & Welfare Trust v. Pacyga*, 801 F.2d 1157, 1160 (9th Cir.1986) (Arizona's anti-subrogation law "relates to" benefit plans and so is preempted).

C.A. § 1144(a) (West 1985) ("the provisions of [ERISA] shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan....").  The Supreme Court has interpreted this provision to preempt state common law contract and tort claims because they "relate to" an employee benefit plan, *see Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 47, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987); *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 62, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987), and we cannot see how a different result could ensue from a claim for unjust enrichment.  *See Airco Industrial Gases v. Teamsters Health & Welfare Pension Fund,* 618 F.Supp. 943, 950 n. 6 (D.Del.1985) ("existence of a federal common law action for unjust enrichment preempts plaintiff's claimed state law action").  Having established ERISA's applicability, we must then focus on common law remedies because ERISA does not provide an explicit remedy for Provident.  Although it has been well recognized for years, both the Supreme Court and this circuit recently gave express authorization for federal courts to "develop a 'federal common law of rights and obligations under ERISA-regulated plans.'"  *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989) (quoting *Pilot Life,* 481 U.S. at 56, 107 S.Ct. at 1558); *see also U.S. Steel Mining Co. v. District 17, United Mine Workers of America,* 897 F.2d 149, 152 (4th Cir.1990) ("the drafters of ERISA authorized courts to develop federal common law").  Here, we must undertake precisely the task outlined in *Firestone* and already performed in a different context in *Steel Mining, i.e.,* develop and add to the growing federal common law of ERISA rights and obligations.

■ Our holding today that the creation of ERISA federal common law establishes "arising under" jurisdiction is not without boundaries, however.  The mere invocation by a plaintiff of § 1331 and federal common law is not enough, by itself, to confer federal question jurisdiction.  For example, a more specific statutory provision conferring exclusive jurisdiction elsewhere would supersede the application of § 1331.  *E.g., Connors v. Amax Coal Co.,* 858 F.2d 1226, 1230 (7th Cir.1988) (Longshore and Harbor Workers' Compensation Act supplants application of § 1331 and ERISA in disputes concerning specific medical expenses).  Rather, we hold, as did the Third Circuit in *Airco,* 850 F.2d at 1033, that federal question jurisdiction exists pursuant to ERISA only where the issue in dispute is of "central concern" to the federal statute.  Such a conclusion is supported both by *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), and *Shaw v. Delta Air Lines,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), two cases decided the same day that address the existence of federal jurisdiction over claims that relate to ERISA.

In *Franchise Tax Board,* a state taxing authority brought suit against an ERISA-qualified benefit trust fund seeking damages and a declaration that its authority to levy was not preempted by ERISA.  Despite the fact that the state did not fall within the parties allowed to sue under § 1132(a), the state argued that *any* action that required an interpretation or application of ERISA "arose under" the laws of the United States and created § 1331 juris-

---

We are saved from weighing in on the issue because we conclude that no subrogation situation is presented here.  Typically, subrogation in the tortfeasor context involves the insurer stepping into the shoes of the insured and attempting to recover from the third party who caused the injury.  *See* 16 *Couch on Insurance* 2d § 61:172 (Rev. ed. 1983).  The instant case, however, concerns a dispute over the terms of the insurance contract itself, and this contract does not provide for subrogation against a third party.  All Provident seeks here is the money it

paid out to the insured; it does not seek to step into Waller's shoes and proceed against the third party tortfeasor.  Consequently, the Virginia anti-subrogation provision is inapplicable, and so we do not reach the preemption issue.

In light of that consideration, if preemption through ERISA had not occurred and we were thrown back on the Virginia law, the situation, as later explanation in the opinion indicates, is one calling for application under Virginia law of unjust enrichment principles.

diction. Writing for a unanimous Court, Justice Brennan did not agree, and held that despite the statute's broad scope, the Congress did not intend for ERISA to preempt every cause of action relating to benefit plans. Thus, the Court concluded, "a suit by state tax authorities ... does not 'arise under' ERISA ... [because] the State's right to enforce its tax levies is not of central concern to the federal statute." 463 U.S. at 25–26, 103 S.Ct. at 2855.

Despite the Court's refusal to invoke federal question jurisdiction in *Franchise Tax Board*, its decision should not be read as a rejection of the application of § 1331 to other claims governed by ERISA, especially those that require application of federal common law.[8] The situation presented in *Franchise Tax Board* was unusual (as it involved the state taxing power and an entity not subject to ERISA regulation), and so the Court was not faced with and did not decide whether federal question jurisdiction could be predicated on the basis of federal common law in accordance with *City of Milwaukee*. In contrast, *Delta Air Lines* represented a more typical ERISA action as there several companies subject to ERISA regulation brought declaratory judgment actions alleging that ERISA preempted several state benefit laws. Noting the difference from *Franchise Tax Board*, which the Court said "d[id] not call into question the lower courts' jurisdiction to decide these cases," the Court held that the plaintiffs "present[ed] a federal ques-

tion over which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve." 463 U.S. at 96 n. 14, 103 S.Ct. at 2899 n. 14. *See also Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 64–67, 107 S.Ct. 1542, 1546–48, 95 L.Ed.2d 55 (1987) (claim of ERISA preemption that is also within scope of § 1132(a) arises under laws of United States for purposes of § 1331).

We read *Franchise Tax Board* and *Delta Air Lines* to provide, "at a minimum," *Airco*, 850 F.2d at 1033 n. 5, for federal question jurisdiction under ERISA where the issue presented, whether it be the creation of federal common law or the interpretation of a specific ERISA provision, is of "central concern" to the statute. We believe the instant case meets this condition. As will be shown below, the issue of whether federal courts should impart unjust enrichment principles into the gaps left by ERISA is one that has divided the courts. Similarly, the issue of whether employers and plan administrators should receive the benefit of these common law principles requires an examination of several collateral ERISA provisions as well as the concerns behind the formulation of the statute. Consequently, we conclude that "the absence of an express statutory grant of jurisdiction in § 1132 of ERISA is, under the rationale of [*City of Milwaukee*], irrelevant, and this claim may be adjudicated in federal court pursuant to 28 U.S.C. § 1331(a)." *Northeast Department*, 764 F.2d at 155.

---

**8.** In *Northeast Department ILGWU v. Teamsters Local Union No. 229*, 764 F.2d 147, 165–167 (3d Cir.1985), all three panel members reached different conclusions regarding the effect of *Franchise Tax Board* and the jurisdictional basis of a claim brought by one employee benefit plan against another. Judges Becker and Sloviter agreed that § 1331 provided the basis for jurisdiction over a question implicating ERISA, but District Judge Fullam, sitting by designation, held that the express jurisdictional grant of § 1132(a)(1)(B) provided the appropriate basis. However, Judges Becker and Sloviter disagreed as to the reasons for § 1331 jurisdiction. Interpreting *City of Milwaukee, Franchise Tax Board* and *Delta Air Lines*, Judge Becker held, as we do here, that a claim requiring the application of federal common law arises under the laws of the United States. Disagreeing, Judge Sloviter argued that *Franchise Tax Board* "expressly re-

jected" the view that "arising under" jurisdiction may be created when federal common law supplies the rule of decision. 764 F.2d at 165–66 (Sloviter, J., concurring). Rather, Judge Sloviter found that § 1331 jurisdiction was proper because, like the plaintiffs in *Delta Air Lines*, the *Northeast Department* plaintiffs brought suit to clarify their obligations under an ERISA-governed plan. *Id.*

This disagreement was clarified partially by the Third Circuit in *Airco*. There, Judge Higginbotham "agree[d]" with Judge Becker's view that *Franchise Tax Board* did not foreclose § 1331 jurisdiction over claims that could arise under the federal common law of ERISA, so long as the claims were of "central concern" to ERISA. 850 F.2d at 1033–34 n. 5. We find that view of *Franchise Tax Board* persuasive and so adopt it today.

### III.

Having established that federal question jurisdiction exists and that the dispute is governed by the federal common law of ERISA, we must now consider whether such common law should include the unjust enrichment remedy sought by Provident. Like many issues that involve ERISA, the federal courts are divided over the creation of a federal common law of unjust enrichment. *Compare Cummings By Techmeier v. Briggs & Stratton,* 797 F.2d 383, 390 (7th Cir.1986) (courts should only invoke federal common law of unjust enrichment in "limited circumstances"), *and Van Orman v. American Ins. Co.,* 680 F.2d 301, 312 (3d Cir.1982) (no federal common law cause of action under doctrine of unjust enrichment when "such a right would override a contractual provision"), *and Amato v. Western Union Int'l,* 773 F.2d 1402 (2d Cir.1985) (no ERISA common law of unjust enrichment in "circumstances of this case"), *with Airco Industrial Gases v. Teamsters Health & Welfare Pension Fund,* 618 F.Supp. 943, 950 (D.Del.1985) (included within grant of authority to create federal common law "is the power, in appropriate circumstances, to order restitution to prevent unjust enrichment"), *with Morales v. Pan American Life Ins. Co.,* 718 F.Supp. 1297, 1301 (E.D.La.1989) ("[c]reation of a federal common law of unjust enrichment ... would be inconsistent with ERISA's terms and policies."). *Cf. Whitworth,* 794 F.2d at 235–36 (finding federal common law cause of action by employer to recover mistakenly paid pension contributions); *Dime Coal Co. v. Combs,* 796 F.2d 394, 397–99 (11th Cir. 1986) (reaching contrary conclusion to *Whitworth* ).

### A.

When entering the fray, we must keep in mind two points. The first involves general concerns about ERISA and federal common law. Despite the power of the federal courts to fill in the interstices of ERISA, we must respect the fact that Congress in creating ERISA has "established an extensive regulatory network and has expressly announced its intention to occupy the field." *Van Orman,* 680 F.2d at 312. Accordingly, we must proceed cautiously in creating additional rights under the rubric of federal common law, and remember that we do not possess *carte blanche* authority to "use state common law to re-write a federal statute." *Nachwalter v. Christie,* 805 F.2d 956, 960 (11th Cir.1986).

It was such concerns that prompted Judge Butzner to announce recently that "we are constrained to fashion only those remedies that are appropriate and necessary to effectuate the purposes of ERISA." *U.S. Steel Mining Co. v. District 17, United Mine Workers of America,* 897 F.2d 149, 153 (4th Cir.1990). In *Steel Mining,* an employer and a pension fund, relying on § 1132(a) of ERISA, sought to recover extracontractual restitution and attorney's fees from a union. The employer and fund had paid these costs pursuant to a West Virginia statute that was subsequently declared to be preempted by ERISA. Declining to engraft a remedy for extracontractual restitution under the guise of federal common law, the court noted that "Congress did not intend that federal courts should develop common law to decide ... issues that bear at best a most attenuated relation to the purposes of ERISA." 897 F.2d at 153.

In addition, we also recognize the concerns that have prompted several courts to decline to impose a federal common law of unjust enrichment. In *Cummings By Techmeier v. Briggs & Stratton,* 797 F.2d 383, 390 (7th Cir.1986), the Seventh Circuit held that fashioning a federal common law unjust enrichment doctrine, although permissible in other circumstances, was inappropriate when it would override a contractual provision in a pension plan. Since the "enrichment" in *Cummings By Techmeier* was authorized by the express terms of the plan, the court concluded that it would not vindicate any "important statutory policy" to supplement the defined remedies in ERISA. 797 F.2d at 390–91. Similarly, in *Van Orman v. American Ins. Company,* 680 F.2d 301, 312 (3d Cir.1982), the Third Circuit held that plan participants were not

entitled, under the doctrine of unjust enrichment, to portions of an actuarial plan surplus. Writing for the court, Chief Judge Seitz stated that because the plan document did not afford the plaintiffs any right to the surplus, contravening the provision would "require[ ] a particularly strong affirmative indication that such a [common law] right would effectuate a statutory policy." 680 F.2d at 313. Finally, we note the decision in *Morales v. Pan American Life Ins. Co.*, 718 F.Supp. 1297, 1301 (E.D.La.1989), which held that "[q]uasi-contractual remedies [such as unjust enrichment] have no place where there is a contract between the parties." 718 F.Supp. at 1301.

### B.

Recognizing these caveats, we nonetheless conclude that fashioning a federal common law rule of unjust enrichment is appropriate in the circumstances of this case. In developing this rule, we look to the plan contract itself, the statutory policies of ERISA, and state law. *See Fox Valley & Vicinity Construction Workers Pension Fund v. Brown*, 897 F.2d 275, 281 (7th Cir.1990) (en banc). Unlike the plan documents in *Cummings By Techmeier*, which explicitly authorized the enrichment, and the one in *Van Orman*, which was silent as to the plan surplus, the plan contract in the present case provided for repayment of the advanced monies. Thus, the creation of a common law remedy here would *further* the contract between the parties and effectuate the clear intent of Provident's "Acts of Third Parties" clause. Second, the remedy is in accord with the statutory provision in ERISA that allows for the return of mistakenly paid contributions made by employers to multiemployer plan funds. *See* ERISA § 403(c)(2)(A), 29 U.S.C. § 1103(c)(2)(A). Recently, several courts have cited to § 1103(c)(2)(A) in creating a common law remedy for employers in their suits to recover erroneous payments to pension funds. *See, e.g., Plucinski v. I.A.M. Nat'l Pension Fund*, 875 F.2d 1052, 1058 (3d Cir.1989) ("if we did not recognize this cause of action it could lead to severely inequitable results that we do not believe

were intended by Congress"). Although the payment made by Provident was probably not mistakenly advanced, § 1103(c)(2)(A) indicates a desire to ensure that plan funds are administered equitably and that no one party, not even plan beneficiaries, should unjustly profit. *Cf. Carl Colteryahn Dairy, Inc. v. Western Pennsylvania Teamsters & Employers Pension Fund*, 847 F.2d 113, 122 (3d Cir.1988) (the rule that "a party should not be allowed to profit from its own wrongs" is "particularly apposite when dealing with [ERISA]" because Congress has emphasized the "equitable character" of these plans). As in the *Plucinski* case, reaching a contrary result would "discourage some employers from operating ERISA qualifying plans. It thus furthers the purposes of ERISA to recognize this cause of action." 875 F.2d at 1058.

Finally, the facts of the instant case fit the archetypal unjust enrichment scenario. As Provident repeatedly reminds us, the result in this case is an inequitable one; the record indicates that Waller received a double recovery despite knowing about the plan's reimbursement provision, and despite the absence of a requirement that Provident's payment be made in the first place. Consequently, Provident argues, it is entitled to recover under a quasi-contractual theory. In Virginia, the "law will imply a promise to pay for goods received," *Kern v. Freed Co.*, 224 Va. 678, 680, 299 S.E.2d 363, 365 (1983), and several cases recognize the related theory of *quantum meruit*, which holds that when one party performs services at the request of the other party to a contract, "the law creates an obligation, which is an implied-at-law contract, to pay a reasonable compensation...." *Humphreys Railways v. F/V Nils S*, 603 F.Supp. 95, 98 (E.D.Va. 1984). As summarized by a national commentator, three elements encompass the equitable remedy of unjust enrichment and quasi-contract: the plaintiff must show that (1) he had a reasonable expectation of payment, (2) the defendant should reasonably have expected to pay, or (3) society's reasonable expectations of person and

property would be defeated by nonpayment. C. Kaufman, *Corbin on Contracts* § 19A, at 50 (Supp.1989).

In the instant case, all three elements are apparent. Provident reasonably expected to be reimbursed for its rather liberal advancements; Waller clearly was aware of the plan's "Acts of Third Parties" provision when she requested and then accepted the benefits; and the interests of society, as reflected by the goals of ERISA and efficient plan administration, would be served by allowance of an equitable remedy. Accordingly, we hold, in the circumstances of the case, that it is appropriate for a federal court to weave into the statutory fabric of ERISA the federal common law remedy of unjust enrichment.[9]

REVERSED.

---

9. Given this disposition, we leave undisturbed the district court's finding on class certification.