67 F.3d 298
 Pens. Plan Guide P 23914K
NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Erskine YARDE, Plaintiff-Appellant,
v.
PAN AMERICAN LIFE INSURANCE COMPANY; Georgetown Industries,
Inc.; Georgetown Steel Corporation, Defendants-Appellees.
Erskine YARDE, Plaintiff-Appellee,
v.
PAN AMERICAN LIFE INSURANCE COMPANY; Georgetown Industries,
Inc.; Georgetown Steel Corporation, Defendants-Appellants.
 Nos. 94-1167, 94-1312.
 United States Court of Appeals, Fourth Circuit.
 Sept. 12, 1995.
 
 Charles Tucker Smith, Grimes & Smith, Georgetown, SC, for appellant.
 L. Hunter Limbaugh, Willcox, Mcleod, Buyck & Williams, Florence, SC, for appellees.
 Before ERVIN, Chief Judge, WILLIAMS, Circuit Judge, and CHASANOW, United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 ERVIN, Chief Judge:
 
 
 1
 Erskine Yarde and Pan American Life Insurance Company ("Pan American") each appeal the district court's decision in a case litigated under ERISA. Our principal task is to determine whether Yarde has standing to recover a life insurance benefit stemming from the disappearance and presumed death of his brother, Edmund Yarde. Although we continue to interpret ERISA's standing provisions narrowly, we conclude that the facts of this case warrant the application of the derivative standing doctrine that has been employed by several other circuits in the recent past. Yarde is entitled to the $8,000 benefit, but we find that the district court's calculation of interest should be reconsidered in light of delays caused by Pan American. The district court did not err, however, in refusing to penalize Pan American for its failure to provide Yarde with an adequate administrative review procedure or in denying Yarde's request for attorneys' fees. Accordingly, we affirm in part, reverse in part, and remand for further consideration in light of this decision.
 
 I.
 
 2
 On October 21, 1979, Edmund Yarde left work at the Georgetown Steel Corporation and was never seen or heard from again. The following day, when a neighbor went to visit Yarde at his home, she found the door open, the television playing, and the heat on. The police suspected foul play, but his body was never found.
 
 
 3
 Edmund Yarde's disappearance did not necessarily mean that he had died. Relevant South Carolina law provided that death would not be presumed until seven years elapsed from the time of the disappearance.[1] Six months after Edmund Yarde disappeared, his mother--whom Edmund had named as his sole beneficiary under his employee benefits plan--died at her home in the Netherlands Antilles. Another six years would have to pass, however, before Yarde would be presumed dead.
 
 
 4
 When Edmund Yarde's mother, Rosamond Yarde, died in 1980, her other son, Erskine Yarde, contacted Georgetown Steel to inquire about collection of his brother's life insurance benefit. Erskine was his mother's sole heir and assumed that he was thereby entitled to any benefits payable under his brother's employee benefits plan. Georgetown Steel informed Erskine that he could not initiate a claim until his brother had been missing for seven years. No one else has asserted any claim to the life insurance benefit.
 
 
 5
 In 1986, once the seven year waiting period had elapsed, Yarde contacted Georgetown Steel and requested payment of the insurance benefits. Over the next five years, Yarde complied with several of Pan American's requests to verify both his brother's death and his right to his mother's interest in the death benefits. As a final requirement, Pan American asked Yarde to obtain a certificate of presumptive death for his brother because Edmund's body had never been located. The South Carolina Department of Health and Environmental Control issued a certificate on April 25, 1991, and Pan American received the certificate five days later. This is the date from which Pan American calculated interest when it tendered a settlement to Yarde on May 23, 1991.
 
 
 6
 The most important facts with respect to this litigation relate to what occurred after May 23, 1991. Not satisfied with the $37.05 worth of interest he had received, Yarde sent the check back to Pan American, explaining that he was entitled to over $12,000 in interest dating back to October 21, 1979--when his brother first disappeared. On June 11, 1991, Pan American responded to Yarde's attorney, Charles Smith, in a letter Smith would later characterize as a denial of Yarde's claim. In actuality, Pan American's June 11, 1991 letter never denied the claim. Instead, it explained that identifying October 21, 1979 as the date of death would have the effect of erasing Yarde's claim to the money. Pan American was not disputing the legitimacy of Yarde's claim. The insurer's point was far more narrow: if death occurred on October 21, 1979, then Yarde failed to file the necessary documents in a timely manner. Yarde's attorney interpreted the June 11, 1991 letter as denying his client's claim and proceeded to request information about Pan American's administrative review procedures. The insurer never responded over the course of a five month period. At no point during this time did Yarde's attorney ever decide to request again the initial sum of $8,037.05 and to challenge separately the denial of interest.
 
 
 7
 Yarde initially brought this action in South Carolina Circuit Court. State courts and federal district courts are granted concurrent jurisdiction over benefit claims arising under ERISA, 29 U.S.C. Sec. 1132(e)(1), and Pan American chose to remove the action to federal court. The district court's ruling satisfied neither party. The court concluded that, under the doctrine of derivative standing Yarde was entitled to the $8,000 death benefit; that prejudgment interest should only be calculated from April 30, 1991, the date on which Pan American received a certificate of presumptive death; and that Yarde was not entitled to a penalty based on the lack of an administrative review or to attorney's fees. Both parties filed appeals--Pan American claiming that Yarde did not have standing to bring a claim under ERISA and Yarde asserting that he is entitled to a more substantial monetary recovery, namely interest in excess of the amount that the district court ordered Pan American to pay.[2]
 
 II.
 
 8
 The primary question on appeal is whether the district court properly concluded that Erskine Yarde ("Yarde") had standing to bring an action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. Sec. 1001, et seq. ("ERISA"), although he was neither a plan "participant" nor a "beneficiary" as defined by the Act. In limited circumstances, other circuits have applied the doctrine of derivative standing in order to give a person otherwise unable to file a claim under ERISA an opportunity to receive benefits that properly belong to a plan participant or beneficiary. It is only because the facts of this case are so unique that we are willing to carve out a narrow exception from our general rule allowing only ERISA participants and beneficiaries to challenge plan administrators' denials of claims. Before we consider application of the derivative standing doctrine, we must address the appropriate standard of review to apply to the district court's decision.
 
 A.
 
 9
 Court actions challenging the denial of benefits under 29 U.S.C. Sec. 1132(a)(1)(B) are subject to the standard of review announced in Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101 (1989). In those instances in which a fiduciary has been given discretionary authority to determine eligibility benefits, deference must be shown, and we review the fiduciary's actions only for an abuse of discretion. Id. at 111. In a case where discretionary authority is not provided, denials of claims are reviewed de novo. Id. at 115; Doe v. Group Hospitalization & Medical Services, 3 F.3d 80, 85 (4th Cir.1993).
 
 
 10
 Pan American both insures and administers the payment of benefits under the group insurance contract purchased by Georgetown Steel. Although Pan American qualifies as a fiduciary to the extent that it exercises discretion over the management of the plan, see 29 U.S.C. Sec. 1002(21)(A), we will afford deferential review to the insurer's decisions about eligibility for benefits only if the plan provides Pan American with the authority to make such decisions. See Doe, 3 F.3d at 85. In its briefs, Pan American concedes that a de novo standard of review is to be applied in this instance, and we agree. "When an eligibility determination by plan administrators turns on a question of law, courts have not hesitated to apply a de novo standard of review." Gauer v. Connors, 953 F.2d 97, 99 (4th Cir.1991) (quoting Weil v. Retirement Plan Admin. Comm., 913 F.2d 1045, 1049 (2d Cir.1990), vacated on other grounds, 933 F.2d 106 (2d Cir.1991)).
 
 B.
 
 11
 Civil actions under ERISA may be brought by "participants" or "beneficiaries" to recover benefits due under the terms of an employee benefit plan. 29 U.S.C. Sec. 1132(a)(1)(B). Only employees or former employees of organizations that participate in an employee benefit plan can properly be labelled "participants." 29 U.S.C. Sec. 1002(7); see Bruch, 489 U.S. at 117 (concluding that "the term 'participant' is naturally read to mean either 'employees in, or reasonably expected to be in, currently covered employment, or former employees who have a reasonable expectation of returning to covered employment or who have a colorable claim of vested benefits' ") (internal citations omitted). Edmund Yarde, as an employee of Georgetown Steel, had been a participant in a benefit plan. ERISA defines "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. Sec. 1002(8). Under this definition, only Rosamond Yarde, the mother of the plan participant, can properly be referred to as a beneficiary--she was the only person designated as such by her son. Appellant Erskine Yarde was neither a participant nor beneficiary, but rather the sole heir of the named beneficiary.
 
 
 12
 Standing under ERISA is fairly narrow. Both the Supreme Court and most other circuits have limited federal jurisdiction in ERISA actions to those entities specified in the statute. In Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1, 21 (1983), the Supreme Court noted that "[t]he express grant of federal jurisdiction in ERISA is limited to suits brought by certain parties ... as to whom Congress presumably determined that a right to enter federal court was necessary to further the statute's purposes." Consistent with Franchise Tax Board, other circuit courts have been "loathe to ignore the legislature's specificity" regarding who is entitled to bring claims under ERISA. Hermann Hosp. v. MEBA Medical & Benefits Plan, 845 F.2d 1286, 1288-89 (5th Cir.1988); see also Pressroom Unions-Printers League Income Security Fund v. Continental Assurance Co., 700 F.2d 889, 892 (2d Cir.), cert. denied, 464 U.S. 845 (1983). "[F]ind[ing] ourselves in agreement with this view" of limited standing under ERISA, we rejected a plan administrator's attempt to bring suit under Sec. 1132(a)(1)(B). Provident Life & Acc. Ins. Co. v. Waller, 906 F.2d 985, 987-88 (4th Cir.), cert. denied, 498 U.S. 982 (1990).
 
 
 13
 We revisit the issue of standing this Court initially dealt with in Waller only to the extent necessary to avoid frustrating the underlying purpose of ERISA--to "protect[ ] ... the interests of participants in employee benefit plans and their beneficiaries." Cottle v. Metropolitan Life Ins. Co., 1993 WL 8201, * 1 (N.D.Ill.1993). The facts of Cottle are remarkably similar to those in Yarde's case. In Cottle, both the participant and the beneficiary were deceased, and the claimant was the sole trustee of the deceased beneficiary's trust. Had the district court not afforded the plaintiff standing,"there would [have] be[en] no one left to enforce whatever rights the beneficiary had to medical benefits." Id.; but see Allergy Diagnostics Laboratory v. Equitable, 785 F.Supp. 523, 527 (W.D.Pa.1991) (holding that standing under ERISA does not extend to anyone other than participants and beneficiaries).
 
 
 14
 Waller dealt with the legitimacy of a plan administrator bringing suit under Sec. 1132(a)(1)(B), an entity that is not as easily categorized as a Sec. 1002(8) beneficiary as Yarde is. Provident Life was the administrator of an employee benefit plan in which Waller participated. After advancing Waller nearly $6,000 to pay for medical expenses sustained as a result of an automobile accident, Provident brought an ERISA action against Waller in the hope of being reimbursed. We held that " Sec. 1132(a)(1)(B) does not provide a federal cause of action for plan administrators." 906 F.2d at 987. Our holding was consistent with that of two other courts that had also held that plan administrators may not bring suit under Sec. 1132(a)(1)(B). Id. at 988 (citing Great Lakes Steel v. Deggendorf, 716 F.2d 1101, 1104 (6th Cir.1983), and In Re Sheppard, 658 F.Supp. 729, 734 (C.D.Ill.1987)). Nothing else was said about the expansion of standing under Sec. 1132, because we determined that the district court had jurisdiction under the federal question provision, 28 U.S.C. Sec. 1331(a) (1982). Waller, 906 F.2d at 991 (concluding that "the absence of an express statutory grant of jurisdiction in Sec. 1132 of ERISA is ... irrelevant, and this claim may be adjudicated in federal court pursuant to 28 U.S.C. Sec. 1331(a)") (internal citations omitted). Waller was as much about a party's ability to adjudicate an ERISA claim under Sec. 1331 as it was about defining the boundaries of standing under Sec. 1132.
 
 
 15
 Courts that have considered claims brought by plan administrators, health care providers, or others not meeting ERISA's definitions of "participant" or "beneficiary" have analyzed the standing issue under the Ninth Circuit's implied statutory standing concept, see Fentron Industries v. National Shopmen Pension Fund, 674 F.2d 1300 (9th Cir.1982), or under the doctrine of derivative standing. Here, we focus on the latter of these two doctrines, finding no reason to grapple with the more controversial Fentron theory.[3] The underlying premise of the derivative standing doctrine is that ERISA health care benefits are assignable.[4] Misic v. Building Service Employee's Health, 789 F.2d 1374, 1377 (9th Cir.1986); Hermann, 845 F.2d at 1286. For purposes of claiming benefits under ERISA, "the assignee stands in the shoes of his assignor, and if the assignment is valid, has standing to assert whatever rights the assignor possessed." Misic, 789 F.2d at 1378 n. 4; see also Northwest Administrators, Inc. v. Con Iverson Trucking, Inc., 749 F.2d 1338, 1339 (9th Cir.1984) (assignee of trust funds permitted to sue under ERISA). In Hermann a health care provider sought benefits as the assignee of an ERISA beneficiary. 845 F.2d at 1286-87. Plaintiff hospital had rendered $341,920.96 in medical services to the wife of a participant in an ERISA-governed welfare benefit plan, but was unable to obtain payment from the plan administrator. The court held that "ERISA allows the assignment of health care benefits," id. at 1289, but did not determine whether a valid assignment had been made.[5] Id.
 
 
 16
 ERISA contains no anti-assignment provision with regard to health care benefits of ERISA-governed medical plans, as it does in the context of ERISA pension benefits. See Misic, 789 F.2d at 1376 (noting that "the absence of any reference in the statute to assignment of the right to reimbursement of welfare benefits is in striking contrast to the complex and extensive provision prohibiting assignment of pension benefits"). An anti-assignment provision in the pension benefits realm is designed "to assure that individuals who have spent their careers in useful and socially productive work will have adequate incomes to meet their needs when they retire." Id. at 1377 (quoting H.R.Rep. No. 807, 93rd Cong., 2d Sess. 68 (1974), reprinted in 1974 U.S.Code Cong. & Ad. News 4670, 4676, and in 2 Subcomm. on Labor of the Senate Comm. on Labor and Public Welfare, 94th Cong., 2d Sess., Legislative History of the Employee Retirement Income Security Act of 1974, at 3128 (1976)). The purpose of the anti-assignment provision would not be served by prohibiting the type of assignment involved in Misic and Hermann--assignment to the person who provided the beneficiary with the health care. Hermann, 845 F.2d at 1289-90; Misic, 789 F.2d at 1377.
 
 
 17
 In Hermann and Misic, parties that were not properly classifiable as "participants" or "beneficiaries" in their own right were able to pursue their ERISA claims because their standing derived from that of Sec. 1002(8) beneficiaries.[6] Other courts have joined the lead of the Fifth and Ninth Circuits, holding that Sec. 1132(a)(1)(B) can supply jurisdiction even when the claimant sues only in his capacity as an assignee of a participant or beneficiary. See, e.g., Cromwell v. Equicor-Equitable HCA Corp., 944 F.2d 1272, 1277 (6th Cir.1991), cert. denied, --- U.S. ----, 113 S.Ct. 2, 120 L.Ed.2d 931 (1992); Kennedy v. Connecticut General Life Ins. Co., 924 F.2d 698, 700 (7th Cir.1991); Michael Reese Hosp. and Medical Ctr. v. Solo Cup Employee Health Benefit Plan, 899 F.2d 639, 640 (7th Cir.1990); Multicare Health Care Services., Inc. v. General Am. Life Ins. Co., 720 F.Supp. 581, 582 (N.D.Tex.1989).
 
 
 18
 The fact that each case to apply the derivative standing doctrine has done so where the claimant was a health care provider does not discourage us from employing the theory to the facts of this case. We find no principled way to distinguish between the health care provider who stands in the shoes of a plan participant or beneficiary and Yarde who, for purposes of the $8,000 death benefit, stands in the shoes of his mother. Treating Yarde as Rosamond's assignee is as legitimate, in light of her testamentary wishes, as recognizing a hospital as the assignee of a patient covered under an ERISA-governed welfare plan. Our motivation for treating appellant Yarde as his mother's assignee is based primarily on Pan American's having treated him as such for over five years--from October 1986, when the seven year waiting period first elapsed, until May 23, 1991, when the insurer remitted payment in the amount of $8,037.05.
 
 
 19
 Application of the derivative standing doctrine in this limited instance provides us with the greatest assurance that we can adhere to ERISA's fundamental aim of protecting the interests of plan participants and their beneficiaries. Counsel for Pan American conceded at oral argument that denying standing to Yarde could potentially result in a forfeiture of the $8,000 benefit. According to Pan American, Rosamond Yarde's estate would not necessarily have standing, and forfeiture, although "frowned upon ... [is] the price that has to be paid." We believe that "[a]n insurance company should not be allowed to deny health benefits merely because the participant and beneficiary of the health plan have died." Cottle, 1993 WL 8201, * 1. We are troubled by Pan American's willingness to accept the possibility it may never have to pay a death benefit in this matter, particularly because the company implicitly recognized Yarde as a beneficiary when it sent him the $8,037.05 check in May 1991. When asked at oral argument why it paid the benefit in the first place if Yarde did not have standing as a beneficiary, Pan American conceded that it was not troubled by the standing issue until Yarde sought additional interest, an administrative penalty, and attorney's fees.
 
 
 20
 Our decision to recognize standing on Yarde's part does not undermine our holding in Waller. In the Fourth Circuit, plan administrators cannot employ the doctrine of derivative standing in order to challenge a denial of benefits under ERISA. Waller does not prevent us, however, from carving out a narrow exception to the general rule that standing in ERISA cases is limited to plan participants and their named beneficiaries. The interests of the plan participant and beneficiary in this case are clear. Unfortunately, due to the unusual circumstances surrounding Edmund Yarde's death, neither the participant nor his beneficiary was able to modify their expressions of good will in light of the other's death. Edmund had been missing for several months when his mother died in January 1980; as a result, he was not able to name a new beneficiary. Conversely, because Edmund could not be considered dead until 1986, Rosamond did not survive long enough to collect the death benefit due under Edmund's plan.
 
 
 21
 Between 1979 and 1991, Erskine Yarde was the only person to assert a claim to the $8,000.[7] Apparently, Pan American determined that, because of the named beneficiary's death and the lack of competing claimants, Yarde was entitled to "beneficiary" status. Our holding is intended only to preserve that initial result. As such, the district court's application of the derivative standing doctrine is affirmed.
 
 III.
 
 22
 Prior to Yarde's May 28, 1991 request for an additional $12,000 in interest, Pan American did not complain of delays in Yarde's filing of his claim. The insurer's May 23, 1991 letter, to which a check for $8,037.05 was attached, gave Yarde no indication that he had failed to provide proof of loss in a timely fashion. It was not until June 11, 1991, that Pan American suggested it would contest Yarde's claim on procedural grounds. We understand Pan American's "timing" argument as being a subtle way of demonstrating that Yarde could not possibly be entitled to interest dating back to 1979. Although we will take this into account in our ruling on the prejudgment interest issue, we agree with the district court that Yarde submitted proof of his claim in a timely fashion and also filed this lawsuit within the requisite time frame.
 
 
 23
 The district court's ruling on the timing issue is based on a factual determination that will be overturned on appeal only if clearly erroneous. Fed.R.Civ.P. 52(a). A finding is "clearly erroneous" only when "the reviewing court on the entire evidence is left with the definite and firm conclusion that a mistake has been committed." United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948); United States v. Cox, 964 F.2d 1431, 1433 (4th Cir.1992).
 
 
 24
 Generally, proof of loss in a claim filed with Pan American must be furnished within ninety days of the date of loss. Because a person is not presumed dead under South Carolina law until he or she has been missing for seven years, October 21, 1986, rather than October 21, 1979, is the date from which loss is to be calculated. Had there been no other language in the "proof of loss" section of the policy, Yarde would have been obligated to provide adequate proof no later than January 19, 1987. An important caveat, however, was attached to the ninety day requirement:
 
 
 25
 [Y]our claim will still be considered if it was not reasonably possible to furnish proof within the time required and that the proof was furnished as soon as reasonably possible.
 
 
 26
 In this instance, it would not have been reasonable for Pan American to enforce the January 19, 1987 deadline. The company required too many additional pieces of information from Yarde for the ninety day restriction to be practical. The unusual circumstances of the case--the distance to the Netherlands Antilles (where Yarde's mother had lived), Yarde's not having been a named beneficiary, and the fact that Edmund Yarde's body was never recovered--placed a more exacting burden on Yarde with respect to the paperwork that would be necessary to process the claim. After a careful study of the record, we do not find a single correspondence prior to December 14, 1990, in which Pan American specifically requested a certificate of presumptive death.[8] More important, nothing in the dialogue between Pan American and Yarde's attorney suggests that the insurer was dissatisfied with Yarde's diligence in collecting the necessary materials. As we stated above, it was only after Yarde employed what Pan American believed to be the "dishonest tactic" of trying to increase his request, that Pan American took offense with the amount of time that it had taken Yarde to file his claim.
 
 
 27
 We are equally unpersuaded by Pan American's argument that Yarde failed to file suit in the South Carolina courts in a timely fashion. The insurer's Benefit Plan states that "[no action shall] be brought at all unless brought within three years from the expiration of the time within which proof of loss is required to be furnished." Pan American contends that a suit should have been filed by January 19, 1990, three years and ninety days after the seven year waiting period had elapsed. Again, Pan American is really trying to make a point about prejudgment interest:
 
 
 28
 If all of the information needed to prove the claim was, as the Appellant now says, available in 1979, and provided before January 19, 1987, this action should have been brought prior to January 19, 1990.
 
 
 29
 As the district court concluded, and as Pan American recognized until Yarde rejected the $8,037.05 check in May 1991, proof of loss could not be provided until seven years had elapsed from the time of Edmund Yarde's disappearance.
 
 
 30
 Furthermore, Pan American is partly responsible for the fact that a suit was not filed until after January 1990. Yarde was not asked specifically to obtain a certificate of presumptive death for his brother until December 14, 1990. That certificate was not received from the South Carolina Court of Common Pleas until April 25, 1991. Yarde commenced this action on March 3, 1992, less than one year later. Again, it was not clear error for the district court to conclude that Yarde's filing of a complaint occurred in a reasonably timely manner. The court below properly interpreted the insurance policy as "provid[ing] for a reasonable period of time to furnish proof of loss when circumstances frustrate a claimant's efforts." Up until ten months before the suit was filed, Yarde was still responding to Pan American's document requests.
 
 
 31
 Pan American's underlying point is a simple one--Yarde cannot have it both ways. Yarde wants us to establish his brother's death at the earliest possible date in order to maximize prejudgment interest on the $8,000. At the same time, Yarde does not want to run into procedural problems that would prevent him from recovering the life insurance benefit. Pan American is right that Yarde's entire claim would be barred if death had actually been proven in 1979. Proof of death did not exist, however, until after the seven year waiting period had elapsed. The district court found any delays in the filing of proof of loss beyond 1986 or in the filing of a suit beyond January 1990 to have been reasonable. We refuse to disturb this judgment on appeal.
 
 IV.
 
 32
 Not satisfied with the district court's award of $8,000 plus interest from April 30, 1991, Yarde contends on appeal that he is entitled to more interest; that Pan American should have been penalized for its failure to provide him with an administrative review of his claim; and that he is entitled to an award of attorney's fees under ERISA. We are troubled with the date from which the district court awarded prejudgment interest, but believe that the lower court properly rejected Yarde's requests for a penalty award and attorney's fees.
 
 A.
 
 33
 Yarde and Pan American disagree as to the date that should be used in calculating prejudgment interest. Yarde seeks interest from the date of his brother's disappearance on October 21, 1979.[9] Pan American agrees with the district court that interest should have accrued only from April 30, 1991, when the insurer received the certificate of presumptive death. The parties are some twelve years and over $12,000 apart on the amount of interest to be paid. ERISA does not specifically provide for prejudgment interest, and generally, we have held that, absent a statutory mandate to the contrary, an award of prejudgment interest is discretionary with the trial court. Quesinberry v. Life Ins. Co. of North America, 987 F.2d 1017, 1030 (4th Cir.1993) (en banc). In this case, however, we find that Pan American is at least partially responsible for Yarde's delay in providing the insurer with a certificate of presumptive death. Such a certificate could have been obtained as early as October 1986, but a specific request for one was not made until Yarde had satisfied several other of the insurer's requests.
 
 
 34
 It took Yarde considerable time to collect the documents Pan American needed to process his claim. On December 22, 1986, Georgetown Steel, Edmund Yarde's former employer, informed Pan American that Yarde's attorney was in the process of obtaining proof of Rosamond Yarde's death. Without proof of his mother's death, as well as documentation that he was her only heir, Yarde would not have been entitled to the $8,000 death benefit. For some unexplained reason, Yarde did not provide Pan American with the requested information for nearly a year-and-a-half. A portion of that material was sent to Pan American in April 1988, but it was not until December 8, 1990 that Yarde provided the insurer with a sworn affidavit stating that he was, in fact, his mother's sole heir. In addition to the information Pan American requested about Yarde's mother, the insurer also asked Yarde to provide evidence that his brother had not simply returned to the Netherlands Antilles to visit their mother.
 
 
 35
 Having satisfied Pan American's requests for further documentation--although it took four years to accomplish--Yarde then received a letter from the insurer on December 14, 1990 asking him to jump through yet another procedural hoop: without a certificate of presumptive death, Yarde would not be permitted to recover the benefit. Another four months went by before Yarde provided Pan American with the certificate. On April 25, 1991--four years, four months, and three days after Pan American received word that Yarde's attorney was in the process of gathering additional documentation for the purpose of satisfying the insurer's filing requirements and, more importantly, four and one-half years after a certificate of presumptive death was first obtainable--Yarde provided Pan American with the final piece of the puzzle.
 
 
 36
 We recognize that "due proof of death" requirements exist to protect insurers from fraudulent or unsubstantiated claims for payment, but we are equally concerned about the ability of insurers to complicate unfairly claimants' attempts to meet filing requirements. We agree with the district court that "when a person disappears and no legal proof of death is immediately available, a beneficiary is forced to wait the prescribed period of time until a certificate of presumptive death is obtainable through the judicial system." Accordingly, October 1986 is the critical date in this case. From that point on, a certificate was obtainable. Had Yarde been notified in a timely manner of this prerequisite, he could have obtained the certificate of presumptive death while collecting the other necessary materials.
 
 
 37
 Yarde's own delays in satisfying Pan American's other requests for information about his mother and brother prevent us from applying prejudgment interest from October 1986. We do not believe, however, that April 30, 1991--the date on which Pan American received the certificate of presumptive death--is the appropriate starting point for the accrual of interest. Instead, we find that Yarde is entitled to interest from August 20, 1990. It was on that date that Yarde provided Pan American with the sworn affidavit that they had sought, thereby satisfying the final aspect of the insurer's December 1986 request. The district court's failure to award interest prior to the April 30, 1991 issuance of the certificate insufficiently accounts for Pan American's role in Yarde's delays.
 
 
 38
 Generally, we are reluctant to disturb a district court's award of prejudgment interest. In this case, however, we believe that Pan American took advantage of Yarde by making it as difficult as possible for him to satisfy its procedural requirements in an expedited manner. Pan American knew of Yarde's claim by December 1986, but failed to request explicitly a certificate of presumptive death until December 14, 1990. We certainly do not contest Pan American's right to require such a certificate, but we believe that the company should have provided Yarde with an opportunity to meet all of their requirements in a more timely fashion.[10]
 
 B.
 
 39
 Yarde contends that Pan American should be penalized under 29 U.S.C. Sec. 1132(c)(1)(b) for failure to provide him with information concerning the company's administrative review procedures. A plan administrator such as Pan American will only be liable under ERISA's penalty provision, however, if it fails to provide information to a person whose "claim for benefits has been denied." 29 U.S.C. Sec. 1133(2). Whether Yarde's claim was ever denied is an issue best resolved at the district court level. Accordingly, a district court's ruling that a plaintiff is not entitled to statutory penalties under ERISA is reviewed under an abuse of discretion standard. Glocker v. W.R. Grace & Co., 974 F.2d 540, 544 (4th Cir.1992); accord Anweiler v. American Electric Power Service Corp., 3 F.3d 986, 990-91 (7th Cir.1993); Fisher v. Metropolitan Life Insurance Co., 895 F.2d 1073, 1077 (5th Cir.1990). We agree with the district court that Pan American never denied Yarde's claim--the insurer simply refused to recognize October 1979 as the starting date for the accrual of interest.
 
 
 40
 Administrators of employee benefit plans have certain responsibilities to individuals whose claims for benefits have been denied. One such requirement is to "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied." 29 U.S.C. Sec. 1133(1) (emphasis added). This notice must set forth the specific reasons for the denial. Participants who fall within Sec. 1133(1) must also be "afford[ed] a reasonable opportunity ... for a full and fair review by the appropriate named fiduciary of the decision denying the claim." Id. at Sec. 1133(2).[11] When an administrator of a plan "fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary," it is within the court's discretion to assess a penalty of up to $100 a day against the administrator. Id. Sec. 1132(c)(1)(B).
 
 
 41
 Our task is not to determine whether Pan American ever denied Yarde's claim. Instead, we have the more limited task of determining whether the district court abused its discretion by finding there had not been a denial. The fact that Pan American paid the claim on May 23, 1991, and then, without provocation on its part, had the check returned one week later makes it difficult to characterize the company's actions as a "denial" of Yarde's claim.
 
 
 42
 Pan American's June 11, 1991 response to Yarde's rejection of the $8,037.05 check did not constitute a denial of the claim. Had Pan American not sent Yarde a check, despite Yarde's satisfaction of Pan American's procedural requirements, we would conclude that the claim had been denied. That was not the case, however. We refuse to find that Yarde's rejection of the initial payment translates into a denial of the claim on Pan American's part. We understand Pan American's June 11 letter--when viewed as a response to Yarde's letter of May 28, 1991--only as informing Yarde that the insurer would not pay interest from the date of Edmund Yarde's 1979 disappearance.
 
 
 43
 In the May 28 letter, Yarde's attorney claimed that Yarde was entitled to an additional $12,128.58 in interest. This amount was calculated based on death having occurred on October 21, 1979. Reading Pan American's June 11 response, it is clear that the insurer's primary dispute is with Yarde's suggestion that death occurred in 1979.
 
 
 44
 If the date of death is October 21, 1979 then the limitation of action erases your claim since no timely claim was filed. Your client would get nothing.
 
 
 45
 In addition, I do not believe the premium had been paid during the absence (since 1979). Again, your client would get nothing.
 
 
 46
 Pan American's point is that Yarde actually does himself a disservice by setting the date of his brother's death at October 21, 1979. Were death calculated from that date, Yarde would be procedurally barred from receiving any money. Based on Pan American's initial willingness to tender a check for $8,037.05, we do not interpret its June 11, 1991 letter as a denial of the underlying $8,000 claim. The letter refers to Yarde's "rejection of the check" but does not include language suggesting that Yarde was not entitled to the base amount of $8,000. Furthermore, Pan American informed Yarde's attorney that "in light of your letter, we will require a release of both you and your client for the $8,037.05 we tendered." Yarde never provided Pan American with a release.
 
 
 47
 Yarde's attorney wrote a letter to Georgetown Steel, Edmund Yarde's former employer, on June 18, 1991, in which he stated that Pan American's June 11, 1991 letter "appeared to be a denial of Erskine Yarde's claim." Yarde's attorney went on to write that he was under the impression that review procedures were available to claimants whose claims have been denied. A copy of this letter was forwarded to Pan American, and over the next five months, Yarde's attorney attempted to secure information regarding Pan American's review procedures. Throughout these several months of failed correspondence, Yarde did not have the $8,000 to which he was entitled. That was his fault, however. He had the option of cashing the $8,037.05 check and challenging the unsatisfactory award of interest on separate grounds. Without the claim having been denied, a penalty cannot be assessed against Pan American for failure to comply with 29 U.S.C. Sec. 1133(2).
 
 C.
 
 48
 Yarde's final contention is that the district court erred in refusing to award him attorney's fees under 29 U.S.C. Sec. 1132(g)(1). In Quesinberry, we recognized that "ERISA places the determination of whether attorneys' fees should be awarded in an ERISA action completely within the discretion of the district court." 987 F.2d at 1028. Accordingly, we review the district court's denial of fees only to determine whether an abuse of discretion has been committed. Custer v. Pan American Life Ins. Co., 12 F.3d 410, 422 (4th Cir.1993).
 
 
 49
 The awarding of attorneys' fees in an ERISA claim continues to be determined under the five-factor test we adopted in Reinking v. Philadelphia American Life Insurance Co., 910 F.2d 1210, 1217-18 (4th Cir.1990), overruled by Quesinberry, 987 F.2d at 1029, even though we have since rejected the notion that a mandatory fee shifting rule exists in the ERISA context. See Quesinberry, 987 F.2d at 1030 (overruling Reinking "to the extent that[it] supports a mandatory presumption in favor of granting attorneys' fees"). Since our decision in Quesinberry, a prevailing party "does not, by prevailing alone, establish a presumption of entitlement to an award of fees." Custer, 12 F.3d at 422.
 
 
 50
 The five-factor approach is not meant to be a rigid test but is designed to provide the district court with general guidelines for determining whether to grant a request for attorneys' fees. The five factors are:
 
 
 51
 (1) degree of opposing parties' culpability or bad faith;
 
 
 52
 (2) ability of opposing parties to satisfy an award of attorneys' fees;
 
 
 53
 (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances;
 
 
 54
 (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and
 
 
 55
 (5) the relative merits of the parties' positions.
 
 
 56
 Quesinberry, 987 F.2d at 1028 (quoting Reinking, 910 F.2d at 1217-18). The vast majority of courts apply this five-factor test to determine whether a party in an ERISA action should be awarded attorney's fees. See, e.g., Salley v. E.I. DuPont de Nemours & Co., 966 F.2d 1011, 1017 (5th Cir.1992); Ellison v. Shenago, Inc., 956 F.2d 1268, 1273 (3d Cir.1992); Meredith v. Navistar Int'l Transp. Co., 935 F.2d 124, 128 (7th Cir.1991); Sweet v. Consolidated Aluminum Corp., 913 F.2d 268, 271 (6th Cir.1990); Miles v. New York State Teamsters Conference Plan, 698 F.2d 593, 602 n. 9 (2d Cir.), cert. denied, 464 U.S. 829 (1983).
 
 
 57
 After reviewing the record in this case, we are satisfied that the district court reached the correct result in its analysis of the Quesinberry factors. Yarde's claim was not designed to benefit anyone other than himself. The relief sought was of a purely personal nature. Although the consequence of our overall decision is to provide a somewhat larger group of individuals with protection under ERISA, Yarde never sought to resolve any "significant legal question" for the benefit of other participants or beneficiaries. We are also unwilling to find that fees should have been awarded because of Pan American's failure to afford Yarde with an administrative review of his claim. As we noted above, such review would only have been required had the claim been denied. Pan American did not act in bad faith with regard to the administrative review issue.
 
 
 58
 Only two of the Reinking factors could possibly weigh in favor of awarding fees to Yarde, but neither merits a reversal of the district court's judgment. The fact that Pan American is capable of paying an attorney's fee cannot, by itself, justify such an award. We have noted that "[n]o one of [the Reinking factors] ... is necessarily decisive, and some may not be apropos in a given case." Quesinberry, 987 F.2d at 1029. In this instance, the district court appropriately discounted the importance of the second Reinking factor. We are also unpersuaded by Yarde's assertion that an award of fees in this case will have an important deterrent effect on Pan American and similarly situated insurers. Notwithstanding Yarde's claim to the contrary, we can identify no "tactics" employed by Pan American to avoid paying the $8,000 benefit. The insurer did not deny Yarde's claim; it sent Yarde a check for the full amount plus interest that had accrued from the time the company received the certificate of presumptive death. The "denial" to which Yarde refers is not the result of Pan American policy; instead, it is due to Yarde's rejection of the payment. Nothing suggests that Pan American's tender of $8,037.05 was part of a deliberate attempt to encourage Yarde to reject their offer. Awarding attorney's fees would not deter any particular action on the part of this or any other insurer.
 
 
 59
 Our inquiry under Quesinberry is limited to "identify[ing] that unusual case in which the judge may shift fees to further the policies of the statute." Custer, 12 F.3d at 422. The decision to deny fees in this case was a reasonable one that took the Reinking factors into account.
 
 V.
 
 60
 The judgment of the district court is accordingly affirmed with respect to its grant of derivative standing and its denial of an administrative penalty and attorney's fees. The district court's judgment is reversed, however, as to the award of prejudgment interest and remanded for further proceedings so that interest can be recalculated from August 20, 1990, at the rate determined by the district court.
 
 
 61
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED
 
 WILLIAMS, Circuit Judge, dissenting:
 
 62
 Justice Holmes once noted that the facts of a difficult case can force "even well settled principles of law [to] bend." Northern Securities Co. v. United States, 193 U.S. 197, 401 (1904). This is one of those difficult cases. As the majority concedes, the plain language of ERISA simply does not give Yarde standing to bring his claim. Unlike the majority, instead of adopting from whole cloth the doctrine of derivative standing, I would follow the precedent of this circuit,[1] and of other circuits,[2] in limiting standing to those entities specified by Sec. 1132(a)(1)(B). Additionally, even if I did believe that derivative standing had a place in ERISA law, I would only extend it to those plaintiffs to whom the plan beneficiary has legally and explicitly assigned his benefits.[3]
 
 
 63
 In my opinion, ERISA does not give Yarde the right to bring this claim; therefore, I would dismiss this case for lack of subject matter jurisdiction. See Stanton, 792 F.2d at 434 (noting that Sec. 1132(a) "is both a standing and a subject matter jurisdiction requirement.").
 
 
 
 [1]
 S.C.Code Ann. Sec. 62-1-107(3) (Law.Co-op.1987) states that "[a] person who is absent for a continuous period of five years, during which he has not been heard from, and whose absence is not satisfactorily explained after diligent search or inquiry, is presumed to be dead." Prior to the adoption of this statute, South Carolina recognized a common law presumption of death from a seven-year unexplained absence. See, e.g., Ligon v. Metropolitan Life Insurance Co., 219 S.C. 143, 64 S.E.2d 258 (1951). Both parties agree that the seven-year rule applies in this case
 
 
 [2]
 The district court held Pan American accountable for the $37.05 worth of interest that the company had been included with the initial $8,000 payment and for interest from May 28, 1991, the date on which Yarde returned that payment to Pan American
 
 
 [3]
 The Ninth Circuit has found little support from other circuits since it held in Fentron that certain "non-enumerated" parties have standing to sue based on a three-part test for determining "implied" statutory authority to sue. The Fentron test requires that a plaintiff must (1) suffer an injury in fact, (2) fall arguably within the zone of interests protected by the statute allegedly violated, and (3) show that the statute itself does not preclude suit. 674 F.2d at 1304. The Second and Fifth Circuits are among those that have rejected Fentron 's implied statutory standing concept. See Hermann Hospital v. MEBA Medical & Benefits Plan, 845 F.2d 1286, 1289 (1988); Pressroom Unions Printers League Income Security Fund v. Continental Assurance Co., 700 F.2d 889 (2d Cir.), cert. denied, 464 U.S. 845 (1983). Other courts have criticized Fentron without flatly rejecting it. E.g., Giardono v. Jones, 867 F.2d 409, 413 (7th Cir.1989); Grand Union Co. v. Food Employers Labor Relations Assoc., 808 F.2d 66, 71 (D.C.Cir.1987); Lifetime Medical Nursing Services, Inc. v. New England Health Care, 730 F.Supp. 1192, 1195 (D.R.I.1990)
 
 
 [4]
 For the most comprehensive coverage of the derivative standing doctrine, see generally David P. Kallus, ERISA: Do Health Care Providers have Standing to Bring a Civil Enforcement Action under Section 1132(a)?, 30 SANTA CLARA L. REV. 173 (1990)
 
 
 [5]
 It was only after the case was remanded to the district court for a determination of whether the beneficiary had made a valid assignment of her Plan benefits to Hermann Hospital that the Fifth Circuit reached this issue. See Hermann Hospital v. MEBA Medical & Benefits Plan, 959 F.2d 569 (5th Cir.1992). In concluding that a valid assignment had been made, id. at 572-73, the Fifth Circuit left undisturbed its earlier decision concerning the legitimacy of derivative standing
 
 
 [6]
 Pan American cites the Fifth Circuit's decision in Coleman v. Champion Int'l Corp., 992 F.2d 530 (5th Cir.1993), as an instance in which standing was denied to a non-beneficiary. The derivative standing doctrine was not considered by the Coleman court, however, thus leaving the earlier Hermann decision intact
 
 
 [7]
 We reserve for another time the issue of whether the doctrine of derivative standing can be employed when more than one claimant has expressed an interest in plan benefits. In this case, no one other than Yarde has asserted a claim to the benefits, and the parties agreed at oral argument that there were no creditors of Rosamond Yarde's estate who had asserted an interest
 
 
 [8]
 A single remark in a June 3, 1982 letter from Georgetown Steel to Yarde's attorney did not provide sufficient notice that a certificate of presumptive death would be required four-and-a-half years later. The death certificate was not referred to again by Georgetown Steel or Pan American until December 14, 1990
 
 
 [9]
 Yarde believes that "reasonable certainty" of his brother's death existed from the moment that Edmund disappeared on October 21, 1979. For Yarde, the fact that Edmund was never heard from again, coupled with the neighbor's discovery of the door to Edmund's home being open and the television and heat being on, provides sufficient proof that Edmund Yarde died in October 1979. According to Yarde, the passage of time and the issuance of a certificate of presumptive death in April 1991 "merely confirmed the obvious." What Yarde ignores, however, is that an award of interest dating back to October 1979 would be tantamount to ignoring South Carolina law that establishes a seven year waiting period before death can be presumed in a missing person case
 
 
 [10]
 Despite Yarde's arguments to the contrary, we are unwilling to disturb the district court's judgment that interest will be added at the "rate prevailing for prejudgment interest" at the time that Pan American's first offer was rejected on May 28, 1991. It is within the discretion of the district court to determine the rate at which pre-judgment interest will be paid. Quesinberry, 987 F.2d at 1031
 
 
 [11]
 Apparently, the administrative review guaranteed participants whose claims have been denied is not statutorily compelled for claim beneficiaries. While Sec. 1133(1) includes both participants and beneficiaries in its notice provision, Sec. 1133(2) only protects the interests of ERISA participants. Only Yarde's missing brother, Edmund, could properly be designated a participant. Consequently, even if we found that Yarde's claim had been denied, he would not automatically have been entitled to the administrative review afforded under Sec. 1133(2)
 
 
 [1]
 See Provident Life & Accident Ins. Co. v. Waller, 906 F.2d 985 (4th Cir.), cert. denied, 498 U.S. 982 (1990) (holding that a plan administrator did not have standing to sue under Sec. 1132(a)(1)(B)); Stanton v. Gulf Oil, 792 F.2d 432, 434 (4th Cir.1986) (denying a retired employee standing under Sec. 1132(a)(2) because he had already received his benefits under the plan and therefore was no longer a participant or a beneficiary)
 
 
 [2]
 See Northeast Dept. ILGWU Health & Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund, 764 F.2d 147, 152-53 (3rd Cir.1985) (noting earlier precedent that "implicitly adopted the view that Sec. 1132 must be read narrowly and literally" and refusing to add "medical plans" to the limited statutory list of entities entitled to sue under ERISA); Pressroom Unions-Printers League Income Security Fund v. Continental Assurance Co., 700 F.2d 889, 892 (2nd Cir.) (surveying both the language of ERISA and its legislative history and concluding that neither source indicated a congressional intent to open the courts to anyone other than participants, beneficiaries or fiduciaries), cert. denied, 464 U.S. 845 (1983)
 
 
 [3]
 See Hermann Hosp. v. MEBA Medical & Benefits Plan, 845 F.2d 1286, 1289-90 (5th Cir.1988) (allowing plaintiff, who provided medical services to the plan's beneficiaries in exchange for an assignment of their benefits, to sue the plan for payment of benefits and noting that plaintiff had standing only because the benefits were legally assigned); Misic v. Building Service Employee's Health, 789 F.2d 1374, 1379 (9th Cir.1986) ("We conclude that Dr. Misic, as assignee of beneficiaries pursuant to assignments valid under ERISA, has standing to assert the claims of his assignors.") (footnote omitted); Northwest Administrators, Inc. v. Con Iverson Trucking, Inc., 749 F.2d 1338, 1339 (9th Cir.1984). Even in Cottle v. Metropolitan Life Ins. Co., 1993 WL 8201, * 1 (N.D.Ill.1993), the unpublished opinion which the majority describes as having "remarkably similar" facts to the instant case, the plaintiff was the sole trustee for the deceased beneficiary's "estate trust," and was suing, not on his own behalf, but on behalf of the estate