**BOARD OF TRUSTEES FOR the HAMPTON ROADS SHIPPING AS- SOCIATION—INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, Plaintiff,**

v.

**Barry STOKLEY, Defendant.**

**Civil Action No. 2:08cv253.**

United States District Court,
E.D. Virginia,
Norfolk Division.

May 27, 2009.

Jeffrey A. Hunn, Richard Hoyt Matthews, Pender & Coward PC, Virginia Beach, VA, for Plaintiff.

Suanne Hardee Bryant, Davis Law Group PC, Chesapeake, VA, for Defendant.

## OPINION

ROBERT G. DOUMAR, District Judge.

The above-styled case comes before this Court upon the Defendant Barry Stokley's ("Stokley") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), filed on April 7, 2009. The Plaintiff Board of Trustees for the Hampton Roads Shipping Association—International Longshoremen's Association ("Board") filed an

Opposition on April 21, 2009. Stokley did not file a Reply. The Motion to Dismiss is therefore ripe for review by this Court.

For the reasons set forth herein, the Court **GRANTS** in part and **DENIES** in part Stokley's Motion to Dismiss. The Court **GRANTS** the Motion in that Count Three is **DISMISSED**. The Court **DENIES** the Motion as to the remainder of Stokley's arguments. Specifically, the Court **FINDS** that: (1) the Board may seek the remedy of unjust enrichment and restitution in this case; (2) a five year statute of limitations applies to the Board's remaining claims; and (3) the Board's claims are equitable in nature and are thus authorized under § 502(a)(3) of ERISA.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Origination of the Action [1]

The Board is an entity that administers a number of benefit plans and funds adopted through several collective bargaining agreements between the Employer–Members of Hampton Roads Shipping Association ("HRSA") and the Affiliated Locals of the Port of Hampton Roads, Virginia, International Longshoremen's Association ("ILA") (collectively, "HRSA–ILA"). The Board is the fiduciary of these plans, which qualify under the Employee Retirement Income Security Action ("ERISA"), 29 U.S.C. § 1001, *et seq.* (Am. Compl. ¶ 7.) Two of the plans administered by the Board are at issue in this action: the HRSA–ILA Pension Plan ("Pension Plan") and the HRSA–ILA Container Royalty Fund No. 1 ("Container Fund") (collectively, "Plans"). The Container Fund is funded by contributions from shipping lines based upon a portion of the container tonnage loaded or discharged in the Port of Hampton Roads. (Am. Compl. ¶ 9.) Non-union employees who receive temporary total or temporary partial workers' compensation credits are eligible to receive benefits from the Container Fund (Am. Compl. ¶ 15), but this eligibility depends upon whether that employee qualified for the benefit during the preceding contract year, which concludes on September 30th of each year (Am. Compl. ¶ 14). The Container Fund is a welfare benefit plan administered to employees "in order to protect them from the decrease in employment opportunities resulting from the use of containers." (Am. Compl. ¶ 12.) The Pension Plan is meant to "assist qualified participants with long-term financial security after retirement" (Am. Compl. ¶ 30), and is funded by signatory employers based upon a "man hour assessment on employee work hours" (Am. Compl. ¶ 9).

In May 1999 and again in April 2002, Stokley was injured while working as an employee for a member of HRSA. (Am. Compl. ¶ 16.) Due to his injuries, Stokley entered into a workers' compensation benefit settlement and received temporary total and temporary partial disability benefits between May 1999 and October 2000, and again between June 2002 and May 2004. (Am. Compl. ¶ 17.) Stokley's employer reported to HRSA–ILA that Stokley was receiving disability benefits in the amount of two-third of his average weekly wage. (Am. Compl. ¶ 18.) Therefore, Stokley began to receive workers' compensation benefits, and he became entitled to benefits from the Container Fund.

In 2004, however, the Board "discovered" that workers' compensation settlements such as that entered into by Stokley were operating such that the Plans were responsible for payment of benefits to in-

---

1. This summary is based on the factual allegations contained in the Board's Amended Complaint that, only for purposes of resolving the Motion to Dismiss, are accepted as true.

jured employees despite the fact that these employees were not required to contribute to the Plans. (Am. Compl. ¶ 19.) Thus, a group comprised of both HRSA member representatives and ILA officials determined that, beginning in September 2004 and onward, workers' compensation credits based on settlements would be awarded on a dollar basis based on the employee's average weekly wage, rather than on a time basis as they previously had been awarded. (Am. Compl.¶ 20.) Despite this change, Stokley apparently continued to receive a reduced rate of workers' compensation benefits, and it was not until March 2007 that HRSA–ILA learned that Stokley was not receiving the amount of disability payments reported by his employer. (Am. Compl. ¶¶ 20–22.) Based on the September 2004 ruling, the Board seeks to amend Stokley's work history to retroactively remove some of the workers' compensation credits Stokley received during the 2002–03 contract year. Thus, the Board argues that it is still owed about $1,274 in Container Fund benefit payments, plus interest, that should not have been paid to Stokley.

The Board also argues that Stokley erroneously received benefits from the Pension Plan. In November 2006, Stokley applied and was approved for disability retirement benefits under the Pension Plan. (Am. Compl. ¶ 32.) The Pension Plan allows a participant to either receive an annuity pension beginning on the first day of the month following retirement ("normal benefit plan"), or elect to receive a lump sum cash payment of 25% of his accrued lifetime benefit and then receive the remaining 75% in monthly annuity payments ("lump sum plan"). (Am. Compl. ¶¶ 30–31.) Stokley elected to participate in the lump sum plan. Therefore, Stokley received a cash payment of approximately $79,029 at the end of 2006, and continued to receive

monthly payments thereafter. (Am. Compl. ¶ 33.) Instead of remaining in retirement, however, Stokley returned to work in the industry on November 28, 2007. (Am. Compl. ¶ 34.) He did not notify the Board of his return to employment, and also continued to receive retirement benefits. The Board learned of Stokley's return to employment on December 14, 2007. Under the terms of the Pension Plan, a participant must immediately repay any lump sum retirement benefits with interest if he returns to work in the industry. (Am. Compl. ¶ 35.) Therefore, the Board argues it is owed the amount of the lump sum payment disbursed at the end of 2006 plus interest, plus the Pension Plan payments Stokley received in November 2007 and December 2007. (Am. Compl. ¶ 38.)

Based on the above, the Board filed suit against Stokley on June 4, 2008 pursuant to § 502(a)(3) of ERISA, codified as 29 U.S.C. § 1132(a)(3). In its Amended Complaint, the Board alleges four counts. Count One charges Stokley with breach of the Container Fund, and argues that the Board is entitled to repayment based upon a term found in the Container Fund's Plan and Trust Agreement. That term provides:

> In the event an Employee receives a payment from the Fund to which he is not entitled, he shall immediately repay the Fund such amount, plus interest (at the rate(s) determined by the Board) from the date of receipt until such payment.

(Am. Compl. ¶ 27.) Count Two charges Stokley with breach of the Pension Plan, arguing that Stokley must immediately repay the Board the lump sum payment he received ($79,029.19), and must repay the pension payments he received in November 2007 ($1,268.25) and December 2007

($1,268.25), for a total of $81,565.69, plus interest. Count Three charges Stokley with breach of contract. In Count Three, the Board alleges that Stokley completed and signed a contract, entitled "Application for Pension Benefits and Benefit Payment Description & Election Form," when he applied for Disability Retirement benefits under the Pension Plan. (Am. Compl. ¶ 41.) This contract provided that Stokley would repay the lump sum benefit he had previously received if he returned to work in the industry. (Am. Compl. ¶¶ 42, 44.) Count Three also requests repayment in the total amount of $81,565.69, plus interest. Finally, Count Four alleges unjust enrichment and restitution. In Count Four, the Board argues that payments to Stokley "constitute inappropriate overpayments under the Plans for which the Board has a fiduciary obligation to recover," and that the Board is entitled to repayments of the sums requested because Stokley has been unjustly enriched by money that, in good conscience, belongs to HRSA–ILA. (Am. Compl. ¶ 50, 52.)

### B. Motion to Dismiss

#### i. Stokley's Motion

In his Motion to Dismiss, Stokley makes four arguments. First, Stokley argues that Count One is barred by the statute of limitations. Stokley argues that Virginia's two-year "catch-all" statute of limitations applies here. See Va.Code Ann. § 8.01–248. Stokley also argues that the five-year statute of limitations governing contract actions does not apply to this case. Id. at 4. See Va.Code Ann. § 8.01–246. Applying the two-year statute of limitations, Stokley contends that the Board's claim under the Container Fund is untimely because it pertains to the Stokley's receipt of funds during the 2003 contract year, which began on October 1, 2002 and ended September 30, 2003. Id. at 5. Stokley states that the statute of limitations should not be deemed to have started to run when the Board "knew or should have known" of the unjust enrichment, but rather at the time Stokley received the payment. Id.

Second, Stokley argues that Count Three is preempted by ERISA and should therefore be dismissed. (Def.'s Second Mot. to Dismiss at 6.) Stokley argues that the allegations in Count Three "make it clear that the 'contract' which Plaintiff claims the Defendant breached, is nothing more than a reiteration of the terms and conditions of the Pension Plan." Id. at 7.

Third, Stokley argues the question of whether the Board may make a claim for unjust enrichment under ERISA. Stokley contends that ERISA preempts any unjust enrichment claim, despite the fact that the statute allows a plan's fiduciary "to obtain other appropriate equitable relief." 29 U.S.C. § 1132(a)(1)(3). Stokley cites to Provident Life & Accident Ins. Co. v. Cohen, 423 F.3d 413 (4th Cir.2005), for the notion that unjust enrichment claims are not available in ERISA actions in this Circuit. (Def.'s Second Mot. to Dismiss at 9.) Because the Board may not claim unjust enrichment, Stokley argues not only that Count Four must be dismissed, but also that Counts One and Two cannot stand.

Finally, Stokley reasons that, even if the Board has the right to bring an unjust enrichment claim, this particular case seeks a legal rather than equitable remedy and therefore cannot stand under ERISA's civil enforcement provision. Thus, Stokley argues that Counts One, Two, and Four fail under the Supreme Court's holding in Great–West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002), which allegedly determined that the type of action at bar is one in which legal, not equitable, relief is sought. (Def.'s Second Mot. to Dismiss at

10.) Thus, Stokley argues, the Board does not seek "equitable relief" as authorized by ERISA because the Board "seeks not the imposition of a constructive trust or lien over some property identified as belonging to it, but seeks a money judgment against" Stokley. *Id.* at 11.

### ii. The Board's Response

In response, the Board first contends that Count One is not barred by the applicable statute of limitations because Virginia's five-year limitations period governs the claim. The Board cites to case law from this Circuit in which courts considering the issue have applied the state statute of limitations for actions on a written contract. (Opp'n at 4 (citing *Dameron v. Sinai Hosp. of Baltimore, Inc.*, 815 F.2d 975, 981 (4th Cir.1987); *Lincoln General Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 425 F.Supp.2d 738, 743 (E.D.Va.2006)).) The Board also cites to case law from other circuits to support this contention. (Opp'n at 5.) Therefore, the Board argues that this Court should apply the Virginia statute of limitations for breach of written contracts, which is five years. *See* Va. Code Ann. § 8.01–246(2). Because Stokley last received payments in December 2003, the Board argues that its claim is not time-barred.

Second, the Board argues that ERISA does not preempt breach of contract claim in Count Three. (Opp'n at 6.) The Board believes that ERISA does not expressly preempt Count Three because the claim is based on a law of general applicability that does not implicate the relations among traditional ERISA plan entities (Opp'n at 7), and does not impliedly preempt Count Three because neither the doctrine of field preemption nor the doctrine of conflict preemption applies (Opp'n at 9). The Board contends that Count Three rests on a written contract which is independent of any employee benefit plan. (Opp'n at 8.)

There is no ERISA preemption without clear manifestation of congressional purpose, the Board states, and conflict preemption does not apply where the legal remedy which is sought, which is unjust enrichment and reimbursement, is not available under ERISA. (Opp'n at 10.)

Third, the Board argues that it has stated a claim for unjust enrichment. The Board compares its case to *Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985 (4th Cir.1990), and states that reimbursement on the basis of unjust enrichment is appropriate because the Container Fund specifically provides that overpayment must be returned; because the Pension Plan specifically states that a participant who returns to work must immediately repay lump sum payments; and because the same principles regarding the reimbursement of mistaken payments by employers to plan funds should apply to mistaken payments by a plan fiduciary to beneficiaries. (Opp'n at 10–11.)

Finally, the Board argues that Stokley's reliance on *Knudson* regarding Counts One, Two, and Four is misplaced. (Opp'n at 11.) The Board strenuously maintains that its efforts to enforce the reimbursement provisions of the Plans constitute requests for "other appropriate equitable relief" as defined in § 502(a)(3) of ERISA. (Opp'n at 11–12.) The Board compares *Knudson*, in which insurers' claims for reimbursement for money obtained from a third-party tortfeasor were not considered equitable, with *Sereboff v. Mid Atlantic Medical Servs., Inc.*, 547 U.S. 356, 126 S.Ct. 1869, 164 L.Ed.2d 612 (2006), in which the Supreme Court found that under factually similar circumstances such a claim was equitable. The Board contends that this case should be considered under the umbrella of *Sereboff* rather than *Knudson*, because the Board seeks the recovery of specifically identified funds and because

said funds are in Stokley's possession. Therefore, the Board contends that the basis for its claims is equitable. The Board compares this case to cases in which the Sixth, Seventh, and Eighth Circuits found that overpayments to beneficiaries resulting from a participant's receipt of social security benefits constitute equitable relief. (Opp'n at 17 (citing *Gutta v. Standard Select Trust Ins. Plans*, 530 F.3d 614, 621 (7th Cir.2008); *Gilchrest v. Unum Life Ins. Co. of America*, 255 Fed.Appx. 38 (6th Cir.2007); *Dillard's, Inc. v. Liberty Life Assurance Co. of Boston*, 456 F.3d 894, 901 (8th Cir.2006)).) The Board also cites to several district court opinions in support of its view. (*See* Opp'n at 17.)

## II. *LEGAL STANDARD*

■ Federal Rule of Civil Procedure 12(b)(6) permits a party to move the court to dismiss an action if the plaintiff fails to state a claim upon which relief can be granted. The function of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. *Neitzke v. Williams*, 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Although a complaint need not contain detailed factual allegations, factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007) (internal citations omitted). Thus, a "formulaic recitation of the elements of a cause of action will not do." *Id.* When considering a motion made pursuant to Rule 12(b)(6), the court is generally limited to a review of the pleadings filed in the case. Exhibits attached to the pleadings are considered a part of the complaint. Fed.R.Civ.P. 10(c).

■ The Court of Appeals for the Fourth Circuit has held that a motion to dismiss under Rule 12(b)(6) should only be granted in "very limited circumstances." *Rogers v. Jefferson–Pilot Life Ins. Co.*, 883 F.2d 324, 325 (4th Cir.1989). However, dismissal is appropriate if it appears that the plaintiff is not "entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." *Harrison v. United States Postal Serv.*, 840 F.2d 1149, 1152 (4th Cir.1988) (citation omitted); *Davis v. Hudgins*, 896 F.Supp. 561, 566 (E.D.Va.1995) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir.1991). When reviewing the legal sufficiency of a complaint, the Court must construe the factual allegations "in the light most favorable to plaintiff." *Schatz*, 943 F.2d at 489 (quotation omitted); *Davis*, 896 F.Supp. at 566 (citing *Martin Marietta Corp. v. Int'l Telecomm. Satellite Org.*, 991 F.2d 94, 97 (4th Cir. 1992)).

## III. *ANALYSIS*

### A. Count Three is Preempted by Federal Law

■ First, the Court hereby **FINDS** that Count Three is preempted by ERISA. As the Supreme Court has explained, "[t]he purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans. To this end, ERISA includes expansive pre-emption provisions which are intended to ensure that employee benefit plan regulation would be exclusively a federal concern." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004) (internal citations and quotation marks omitted). Therefore, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Id.* at 209, 124

S.Ct. 2488. The law enunciated by the Supreme Court is bolstered by the statutory language in the ERISA preemption provision, which explicitly states, in relevant part, that "the provisions of this title ... shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144. The ERISA provision that would apply to the factual allegations included in Count Three is § 502(a), codified as 29 U.S.C. § 1132(a), which states that a "civil action may be brought ... by a ... fiduciary ... to obtain other appropriate equitable relief ... to enforce any provision of this subchapter or the terms of [its] plan." 29 U.S.C. § 1132(a)(3)(b).

■ Congress could not be clearer that ERISA preempts common law causes of actions such as the breach of contract claim embodied in Count Three. Count Three makes a thinly veiled attempt to speak in terms of a "contract" in order to mask the direct connection between the cause of action and the Pension Plan. The "contract" about which the Board speaks, however, is merely the application form that Stokley filled out in order to gain the benefit of the Pension Plan's terms. Thus, the "contract" clearly "relate[s] to any employee benefit plan," 29 U.S.C. § 1144, and is preempted by ERISA. Furthermore, it is obvious that Count Three seeks "to enforce any provision of ... the terms of the plan," 29 U.S.C. § 1132(a)(3), and is therefore superseded by ERISA's civil enforcement provision. The "contract" requires Stokley to return the lump sum benefit he received from the Pension Plan if he returns to work in the industry. (Am. Compl. ¶¶ 42–44.) This requirement is also stated in the terms of the Pension Plan itself. (*See* Mot. to Dismiss Ex. 2 § 3.10(b).) Therefore, Count Three seeks to enforce a provision of the terms of the Pension Plan. Further bolstering this con-

clusion is the fact that Count Two, which explicitly relies upon ERISA and the terms of the Pension Plan, seeks exactly the same amount of damages as that requested by Count Three. (*Compare* Am. Compl. ¶ 39 *with* Am. Compl. ¶ 48.) Because it is inescapably related to the Pension Plan, Count Three is preempted by federal law.

## B. The Board May Allege Unjust Enrichment

■ Second, the Court hereby **FINDS** that the Board may seek unjust enrichment and restitution as relief in this case in Count Four of the Amended Complaint.

The Fourth Circuit has wrestled with the issue of whether a plaintiff alleging a claim under ERISA is entitled to argue for relief under the common law theory of unjust enrichment. In 1990, the Fourth Circuit fashioned a federal common law rule allowing an ERISA plaintiff to do so. *See Provident Life & Accident Ins. Co. v. Waller,* 906 F.2d 985 (4th Cir.1990). The plaintiff, an administrator of a self-funded employee benefit plan, had brought suit under an inapplicable civil enforcement section of ERISA. After acknowledging that the plaintiff had not properly brought suit under ERISA, the court forgave this deficiency under the theory that a court "may excuse pleading defects if the facts alleged in the complaint and the relief requested demonstrate the existence of a substantial federal question." *Id.* at 988. The court determined that a federal question was involved and found jurisdiction under 28 U.S.C. § 1331(a), which provides the United States courts with general federal question jurisdiction. The court then considered whether a claim of unjust enrichment could be brought against the defendant. Operating in a factual situation similar to this case, the court appeared to be motivated by the concern that without

relief under the rule of unjust enrichment, "the result ... would be an inequitable one [because] the record indicates that [the defendant] received a double recovery despite knowing about the plan's reimbursement provision." *Id.* at 993. The court looked to Virginia law for support and found that "fashioning a federal common law rule of unjust enrichment is appropriate in the circumstances of this case." *Id.* Thus, the court allowed the plaintiff in that case to continue its claim under the general federal question statute, § 1331(a).

In 2005, however, the Fourth Circuit had the occasion to revisit its 1990 decision. In *Provident Life & Accident Ins. Co. v. Cohen,* 423 F.3d 413 (4th Cir.2005), the court expressed concerns that "the justification for the court's recognition of a federal common law unjust enrichment claim in *Waller* is in serious doubt." *Id.* at 423. The *Waller* court had expressed a reluctance to find federal jurisdiction over the case under the terms of § 502(a)(3) of ERISA, instead preferring to rest its opinion upon the general terms found in § 1331. *See Waller,* 906 F.2d at 988 nn. 5 & 6. The *Cohen* court noted that since the time of the *Waller* decision, it had become clear that the administrator of a plan qualified as a "fiduciary" under § 502(a)(3). *Cohen,* 423 F.3d at 424. Because *Waller* had grounded its decision in § 1331 rather than § 502(a)(3), the *Cohen* court wondered whether *Waller*'s "recognition of a federal common law unjust enrichment claim remain[ed] viable." *Id.* Additionally, the court found it "particularly inappropriate to afford [the plaintiff] a federal common law remedy where Congress purposefully chose to exclude such a remedy under the governing statute." *Id.* The court noted that, according to the Supreme Court, any federal common law fashioned under ERISA may not create remedies beyond those which Congress has seen fit to enact. *Id.* at 425 (citing *Mass. Mut. Life Ins. Co.*

*v. Russell,* 473 U.S. 134, 146, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985)). Because one panel may not overrule another panel, however, the *Cohen* court chose to severely limit the reach of the *Waller* holding by finding that the remedy of unjust enrichment is available only where a specific provision of the policy or contract underlying the plan provides for reimbursement of erroneously paid benefits. *Id.* at 426.

Fortunately for the Board, the provisions of the Plans each contain a section providing for reimbursement of erroneously paid benefits in certain circumstances. Article III, Section 3.10(b) of the Pension Plan's underlying contract states that:

> A Participant shall reimburse the Fund, with interest, for any payments made to him/her in respect of any month for which such payments were suspended or terminated under (a) above. A Participant who retires, receives a Lump Sum Benefit (as defined in Section 3.3) and returns to Employment in the Industry shall also reimburse the Fund, with interest, an amount equal to the Lump Sum Benefit minus the additional monthly pension benefits the Participant would have received had the Lump Sum Benefit not been elected.

(Mot. to Dismiss Ex. 2 at 18.)

Section 3.4 of the Container Fund's underlying contract, in language that was added in 2002, states that:

> In the event an Employee receives a payment from the Fund to which he is not entitled, he shall immediately repay the Fund such amount, plus interest (at the rate(s) determined by the Board) from the date of receipt until such repayment.

(Mot. to Dismiss Ex. 1 at 16.)

Because terms in both Plans specifically provide for reimbursement of erroneously paid benefits, the common law rule enunci-

ated in *Waller* still applies to the Board's case. Thus, the Board is entitled to claim unjust enrichment on any amount it proves to be owed under the Pension Plan or the Container Fund.

## C. Statute of Limitations is Five Years

■ Third, the Court hereby **FINDS** that the five-year limitations period governing contract claims in Virginia applies to this case.

Because ERISA provides no explicit limitation period for bringing a private cause of action under § 502(a)(3), this Court must look to the appropriate state statute of limitations to determine whether the Board's action is time barred. Therefore, the Court must resolve the issue of which state statute of limitations should apply to actions by a fiduciary against a plan beneficiary pursuant to § 502(a)(3) of ERISA.

It is not so much the title as the nature of the action that is central to a determination of the appropriate limitations period. Thus, the Court must characterize the action in order to determine the state statute that applies. Notably, the Court would not have jurisdiction to hear this case were it not for the repayment clauses found in the underlying contracts. In effect, the law created by the intersection of the *Waller* and *Cohen* opinions allows the Court to provide the remedy of restitution only by giving force to a contractual provision requiring repayment to the fiduciary. The nature of the action therefore follows from the repayment clause, for without the clause there could be no action. This must mean that the most analogous statute of limitations is that which applies to an action in contract.

Several cases in this Circuit lend credence to the Court's position on this question. In *Dameron v. Sinai Hosp. of Baltimore*, 815 F.2d 975 (4th Cir.1987), a claim that a hospital breached its duty under its pension plan to provide plaintiffs with their vested rights was deemed analogous to a breach of contract action. *Id.* at 981. The *Dameron* court, therefore, applied the statute of limitations for contract actions under Maryland law. *Id.* Similarly, in *Williams v. Ironworkers Local 16 Pension Fund*, 178 Fed.Appx. 235 (4th Cir.2006), the Fourth Circuit found that an employee's action to recover benefits allegedly due to him under the terms of a pension plan was analogous to a state-law claim for breach of contract, meaning that the state statute of limitations for breach of contract applied. *Id.* at 236. Finally, in *Lincoln General Ins. Co. v. State Farm Mut. Ins. Co.*, 425 F.Supp.2d 738 (E.D.Va.2006), the Alexandria Division of this Court found that Virginia's five-year statute of limitations for breach of contract applied to a case in which a subrogation claim was filed by a plan administrator pursuant to § 502(a)(3) of ERISA. *Id.* at 743.

An opinion from the Eleventh Circuit also guides the Court and supports this view. In *Blue Cross & Blue Shield v. Sanders*, 138 F.3d 1347 (11th Cir.1998), the Eleventh Circuit wrestled with the same statute of limitations question as that which is before this Court. When defining the essential nature of a § 502(a)(3) action by a fiduciary against a participant to enforce a reimbursement provision of a plan, the court stated that "[t]he characterization of the federal claim for statute of limitations purposes is derived from the elements of the cause of action, and Congress' purpose in providing it." *Id.* at 1357 (quoting *Byrd v. MacPapers*, 961 F.2d 157, 159 (11th Cir.1992)) (internal quotation marks omitted). Upon considering these factors, the court found that the action to enforce the plan's reimbursement provision was most closely analogous to a simple contract action, and thus was gov-

erned by the forum state's six-year statute of limitations. *Id. See also Manginaro v. The Welfare Fund of Local 771*, 21 F.Supp.2d 284, 299–301 (S.D.N.Y.1998).

Although the forum state's contract statute of limitations is most analogous here, the question remains whether a three-year or a five-year limitations period applies. Virginia's statute of limitations for actions sounding in contract is governed by Va. Code Ann. § 8.01–246. Subsection two of that statute states that the five-year period will apply to an action "on any contract which is not otherwise specified and which is in writing and signed by the party to be charged thereby, or by his agent." Va. Code Ann. § 8.01–246(2). Subsection four of the statute states that the three-year period will govern in "actions upon any unwritten contract, express or implied." Va.Code Ann. § 8.01–246(4). Because this action involves written contracts, the five-year period appears most pertinent here. Furthermore, the Court finds that an agent of Stokley signed the contracts underlying the Plans. The action involves ERISA contracts between unions and employers. A union is an agent in representing and obtaining the best deal for its employees. Stokley's union executed the contracts, and for purposes of making such a contract, the union is an agent of the employee for whom it was written. The contracts underlying the Plans, therefore, were signed by Stokley's agent. The provision outlining the five-year limitations period applies in full to this case.

Under a five-year statute of limitations, Count One is not time barred.[2] Stokley's alleged wrongful receipt of Container Fund benefits occurred during the 2002–03 contract year. (Am. Compl. ¶ 25.) The 2002–03 contract year began on October 1, 2002 and ended on September 30, 2003. (Mot. to Dismiss at 5.) Therefore, the Court should presumably run the statutory clock starting on or about September 30, 2003. *Cf. Am. Physical Therapy Assoc. v. Fed'n of State Bds. of Physical Therapy*, 271 Va. 481, 628 S.E.2d 928 (2006) (finding that the plaintiff's action claiming that three fee increases breached a contract was not time barred even though the first increase took effect more than five years before the action; applying Va.Code Ann. § 8.01–246(2), a new cause of action arose each time a new fee was imposed). This action was commenced on June 4, 2008. Counting five years from that date, the Board's claim is timely.

## D. The Board's Claims Seek an Equitable Remedy

Finally, the Court hereby **FINDS** that the Board seeks an equitable remedy in this case. In the alternative, therefore, the Board could go forward with an unjust enrichment claim in equity.

Section 502(a)(3) of ERISA provides, in relevant part:

A civil action may be brought ... by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan.

29 U.S.C. § 1132(a)(3).

The Supreme Court has construed § 502(a)(3)(B) of ERISA to authorize only

---

**2.** Defendant did not argue that Count Two is time barred. *Count Two alleges that Defendant wrongfully received Pension Plan benefits in November 2007. Even if the Court were to apply the two-year limitations period* suggested by Defendant, Count Two would *still be timely. Nevertheless, the five-year* limitations period applies to Count Two as well as Count One.

"those categories of relief that were typically available in equity." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255–56, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) (emphasis removed). Furthermore, the Court has determined that, in order for the relief to be authorized under ERISA, both the nature of the recovery sought and the basis for the claim must be equitable. *See Sereboff*, 547 U.S. at 363, 126 S.Ct. 1869.

In *Knudson*, the 2002 case relied upon by Stokley, the Supreme Court considered a situation in which an ERISA action was brought for specific performance of the reimbursement provision of a health plan after the injured plan beneficiary recovered from a third party tortfeasor. 534 U.S. at 207–09, 122 S.Ct. 708. The petitioners, an insurance company, the health plan, and the former employer, brought suit seeking enforcement of the plan's reimbursement provision, which gave it the right to recover payments made by the third party to the beneficiary. *Id.* at 207, 122 S.Ct. 708. The Supreme Court, however, held that the petitioners were seeking legal, not equitable, relief because the petitioners sought to impose personal liability on the beneficiary for a contractual obligation to pay money. *Id.* at 210, 122 S.Ct. 708. Therefore, the Court held, § 502 of ERISA did not authorize this action.

The *Knudson* Court found that the claim at issue was legal because the proceeds from the settlement of the tort action to which the petitioners laid claim were not in the beneficiary's possession. Rather, the disbursements from the settlement were paid to two trust accounts. Furthermore, "[t]he basis for petitioners' claim is not that respondents hold particular funds that, in good conscience, belong to petitioners, but that petitioners are contractually entitled to *some* funds for benefits that they conferred." *Id.* at 214, 122 S.Ct. 708. This amounted to the imposition of personal liability for the benefits conferred upon the beneficiaries.

▬▬ *Sereboff*, the 2006 Supreme Court case relied upon by the Board, paints a different picture. Again, as in *Knudson*, the case involved an ERISA action in which the fiduciary of a health plan brought suit against plan beneficiaries. The fiduciary sought reimbursement for amounts paid for beneficiaries' medical expenses after the beneficiaries obtain a settlement with third party tortfeasors. The beneficiaries had agreed to set aside from their tort recovery a sum equal to the amount claimed by the fiduciary, and the beneficiaries preserved this sum in an investment account pending the outcome of the suit. The Court, under Chief Justice John G. Roberts, held that the fiduciary was seeking equitable, not legal, relief. The Court pointed out that, unlike in *Knudson*, the fiduciary in *Sereboff* sought "specifically identifiable" funds that were within the possession and control of the beneficiaries—"that portion of the tort settlement due [the fiduciary] under the terms of the ERISA plan, set aside and preserved [in the beneficiaries'] investment accounts." *Id.* at 362–63, 126 S.Ct. 1869. Also unlike in *Knudson*, the fiduciary did not attempt to impose a personal liability for a contractual obligation to pay money. *Id.* at 363, 122 S.Ct. 708. Rather, it sought its recovery through a constructive trust or equitable lien on a specifically identifiable fund, and did not seek to recover from the beneficiaries' assets generally. *Id.* "ERISA provides for equitable remedies *to enforce plan terms*, so the fact that the action involve a breach of contract can hardly be enough to prove relief is not equitable; that would make § 502(a)(3)(B)(ii) an empty promise." *Id.* The Court elucidated that, in *Knudson*, it "did not reject [the health plan's] suit out

of hand because it alleged a breach of contract and sought money, but because [the health plan] did not seek to recover a particular fund from the defendant." *Id.*

The *Sereboff* Court noted that whether the remedy sought is legal or equitable depends both upon the nature of the underlying remedy sought and the basis for the plaintiff's claim. *Id.* Having determined the issue of whether the nature of the underlying remedy sought was equitable or legal, the Court turned to the question of the basis for the plaintiff's claim. The Court found that the fiduciary had established that the basis for its claim was equitable. The Court relied upon a "familiar rule of equity that a contract to convey a specific object even before it is acquired will make the contractor a trustee as soon as he gets a title to the thing." *Id.* (internal quotation marks omitted). In *Sereboff,* the plan had an "Acts of Third Parties" provision that specifically identified a particular fund, distinct from the beneficiaries' general asserts, and stated the particular share of that fund to which the fiduciary would be entitled should the beneficiaries receive a recovery from a third party. This satisfied the "familiar rule of equity" upon which the Court relied.

 Here, the Board is correct to draw parallels between its case and *Sereboff.* Regarding the basis of the claim, it is true that the Board's claims accord with the "familiar rule of equity" relied upon in *Sereboff.* The terms of the Plans each state that a particular share of the proceeds of the fund must be repaid should the beneficiary receive payments to which he is not entitled. Thus, as in *Sereboff,* the Plans stated that the fiduciary would be entitled to a particular share of proceeds should Stokley erroneously receive pay-

ments. This made Stokley a trustee of the particular funds under a contract to convey the funds before they are acquired. Thus, the basis of the Board's claim is equitable.

Regarding the nature of the underlying remedy, as in *Sereboff,* the particular funds to which the Board claims entitlement are not held in a trust, but are in Stokley's possession. Although it is unclear whether these funds are "specifically identifiable," *Sereboff,* 547 U.S. at 363, 126 S.Ct. 1869, or are held separate from Stokley's personal funds, the Court will assume for purposes of this Motion to that Stokley has in fact commingled the alleged overpayments with his personal funds. Therefore, the question is whether the Court may construe the Board's claims as equitable rather than legal where the overpayments are not held separate in Stokley's finances.

In dicta, the *Sereboff* Court suggested an answer to this question. The Court stated that "no tracing requirement ... applies to equitable liens by agreement or assignment." The Court relied upon the previous Supreme Court case of *Barnes v. Alexander,* 232 U.S. 117, 34 S.Ct. 276, 58 L.Ed. 530 (1914) in which "the plaintiffs ... could not identify an asset they originally possessed, which was improperly acquired and converted into property the defendant held, yet that did not preclude them from securing an equitable lien." *Sereboff,* 547 U.S. at 365, 126 S.Ct. 1869. This indicates that the funds wrongfully held by a defendant need not be separate from his personal finances in order to be the subject of "other equitable relief" under ERISA.

ERISA case law from other circuits is also instructive on this question.[3] In *Gutta v. Standard Select Trust Ins. Plans,* 530

---

**3.** This Circuit has not had occasion to consider this question subsequent to the *Sereboff* case.

F.3d 614 (7th Cir.2008), the Seventh Circuit held that a group disability insurer could seek reimbursement of disability benefits paid to an insured former surgeon based on the plan's offset provision, which set up an equitable lien by agreement against the insured's income from other group-insurance sources. *Id.* at 620. In so deciding, the *Gutta* court did not require that the funds sought be separate from the insured's personal finances. *Id.* The *Gutta* court pointed out that, under *Sereboff,* an equitable lien sought pursuant to an agreement need not satisfy "strict tracing rules." In *Gutta,* there existed an equitable lien by agreement that was not dependent on the ability to trace particular funds. *Id.* at 621.

Similarly, in *Gilchrest v. Unum Life Ins. Co. of America,* 255 Fed.Appx. 38 (6th Cir.2007), the Sixth Circuit found that a life insurance plan's claim against a beneficiary to recoup overpayments based on the plan's reimbursement provision was equitable. The question of whether an action to recover overpayments could satisfy *Sereboff*'s requirement of a specifically identified fund did give the *Gilchrest* court pause, because the overpayments were commingled with the insured's personal funds. Nevertheless, the Sixth Circuit resolved the question in favor of the life insurance plan because "the Plan's overpayment provision asserts a right to recover from a specific fund distinct from [the insured's] assets—the fund being the overpayments themselves." *Id.* Because there was a particular share of that fund to which the life insurance plan was entitled, *Sereboff*'s requirement of a specifically identified fund was satisfied.

The Court finds that, in this case, the Board's claims seek an equitable remedy. Despite the fact that Stokley likely has commingled the Board's overpayments in his personal accounts, these overpayments still constitute specifically identifiable funds that are distinct from Stokley's assets because the overpayments constitute a specific fund and because the "strict tracing rules" of traditional restitution do not apply in the case of restitution pursuant to an agreement.

## IV. CONCLUSION

For the aforementioned reasons, the Court **GRANTS** Stokley's Motion to Dismiss in that Count Three is dismissed. The Court **DENIES** the Motion as to the remainder of Stokley's arguments. Specifically, the Court **FINDS** that: (1) the Board may seek the remedy of unjust enrichment and restitution in this case; (2) a five year statute of limitations applies to the Board's remaining claims; and (3) the Board's claims are equitable in nature and are thus authorized under § 502(a)(3) of ERISA.

The Clerk is **DIRECTED** to forward a copy of this Opinion to all counsel of record in this case.

**IT IS SO ORDERED.**